**NATIONAL AID LIFE ASS'N v. MURPHY.**
No. 11558.

Court of Civil Appeals of Texas. Dallas.
Dec. 1, 1934.

Rehearing Denied Jan. 12, 1935.

-Snyder, Owen & Lybrand, of Oklahoma City, Okl., and Taylor & Irwin and W. J. Rutledge, Jr., all of Dallas, for appellant.

Crane & Crane, of Dallas, for appellee.

LOONEY, Justice.

Mrs. Mattie E. Murphy, widow, sued the National Aid Life Association, a benefit association conducted on the assessment plan, referred to herein as the Oklahoma Association, to recover the amount due upon a benefit certificate issued by said association to Ernest C. Murphy, deceased husband of plaintiff. The case was tried to a jury, and resulted in judgment for plaintiff for the full amount of the policy and interest, from which the association appealed, and plaintiff filed cross-assignments of error, based on the action of the court in striking out on exception her plea for penalty and attorney fee.

The material facts are these: During September, 1930, Ernest C. Murphy became a member of the Citizens' Mutual Life & Accident Association, conducted on the assessment plan, designated the Texas Association; its certificate or policy issued to Mr. Murphy was in the sum of $5,000, payable on his death to his wife, plaintiff herein. The affairs of the Texas Association were placed in the hands of T. K. Irwin, receiver, who, on May 25, 1931, entered into a written contract with the Oklahoma Association, by the terms of which said association became obligated to take over the membership of the Texas Association, consisting of approximately 4,500 members in good standing (including Ernest C. Murphy), representing effective life insurance amounting to about $65,900,000. The pertinent provisions of the absorption contract are these:

"(4) First party (Oklahoma Association) hereby offers to admit to its membership all of the members of said Texas Association without further medical examination and without expense except as hereinafter provided and to issue benefit certificates to said newly transferred members, same to be accepted in lieu of benefit certificates in said Texas Association now held by them, said certificates to be issued in consideration of the warranties of the truth of the statements made in their original respective applications to said Texas Association, but only when the statements appearing therein shall, in writing, be re-affirmed to have been true when originally signed and same shall become a part of the new benefit certificate to be issued by party of the first part. * * *

"(6) First party will execute and tender by mail to each member of said Texas Association its own mutual benefit certificate for a like maximum amount of insurance as stipulated by the present benefit certificate held by each member of said Texas Association, respectively, same to become effective however only as and when the respective members of the said Texas Association, while yet living and within thirty days after the receipt of the tendered benefit certificate, shall execute and return to the first party an accompanying receipt for said benefit certificate (a copy of which is hereto attached marked 'Exhibit A' and made a part hereof), agreeing to the acceptance thereof in lieu of any liability of said Texas Association under the benefit certificate now held by said member, and shall also remit a special contingent assessment of $2.00 per thousand of maximum death benefits specified in said benefit certificate of first party. * * * *"

It is obvious that the absorption contract was entered into for the benefit of the creditors, and members in good standing, of the

Texas Association, including Ernest C. Murphy; the appointing court approved the arrangement, and the same was also approved by the commissioners of insurance of the states of Oklahoma and Texas.

In pursuance of the agreement, the Oklahoma Association wrote Ernest C. Murphy June 4, 1931, inclosing the benefit certificate sued upon, also a receipt therefor to be executed by the insured. The letter, transmitting the certificate and receipt, called attention to the consummation of the contract with the receiver, stating that: "In compliance therewith, we now offer you the enclosed benefit certificate. * * * Enclosed also is form of a receipt for said benefit certificate and memorandum of ratification of your membership transfer, which * * * when signed by you and mailed to us, together with the remittance of $2.00 per thousand, constitute the necessary closing instrument between yourself and this association, transferring your membership and giving you adequate protection on the terms and conditions therein set forth. * * * The association is waiving the usual membership fee and medical examination, and will place you in a group formed of Texas. Our Texas office is at 810 Fidelity Union Bldg., Dallas, Texas." About ten days later, a follow-up letter was mailed to Murphy, urging him to execute the receipt and remit the special contingent assessment mentioned.

The pertinent provisions of the receipt transmitted with the letter are these: "I understand and agree that, (1) I will not become a member of said National Aid Life Association unless I personally sign and mail this receipt, while I yet live, together with remittance of a special contingent assessment of $2.00 per thousand of maximum death benefits represented by said proffered benefit certificate. * * * (2) The written statements in my application last submitted to and accepted by said Texas Association are correctly there recorded and are as given by me, and shall be considered as and become the basis and consideration for my membership, and a material part of said benefit certificate in the National Aid Life Association with as much force and effect as though addressed to said Association. (3) Every statement now appearing in said application was true at the date said application was made and any false statement therein contained shall be treated as a breach of warranty and shall release said Association from any liability other than to return to me or to my beneficiary the sum which said Association may hereafter collect from me as dues or by assessments. (4) Said benefit certificate issued by the National Aid Life Association shall not be binding upon said issuing Association should it develop that I was not in good health at the date my benefit certificate was delivered to me by said Texas Association; or that I was not in good standing in said Association at the date said Receiver was appointed. * * * Note: This receipt must be executed and mailed within 30 days from the date of your certificate, together with a special contingent assessment of $2.00 per thousand of maximum death benefits represented by said proffered benefit certificate. * * *" The record discloses that, within the 30-day period prescribed, the receipt or memorandum of ratification was executed, delivered, and the special assessment was paid, in the manner and under the circumstances hereinafter set out.

The certificate of membership or policy sued upon contains a provision that defendant insists is a warranty, the alleged violation of which constitutes its chief defense; this provision reads: "This certificate is issued upon the warranty by the applicant that all statements and answers to questions made in application for the same are true, said application being by reference made a material part of this contract, and this certificate is not effective unless delivered into the manual possession of the applicant, while he is still in good health."

The receipt or memorandum of ratification was executed and delivered and the special assessment was paid, in the manner and under the circumstances following: When the first letter, above mentioned, was received by the Murphys, they were without sufficient funds to pay the assessment, but, on receipt of the follow-up letter, Mr. Murphy directed Mrs. Murphy to arrange with Mr. E. Rothschild of Dallas for a loan of $10 to pay the assessment, which he agreed to do; Mrs. Murphy also requested Rothschild to sign Mr. Murphy's name to the receipt, and deliver same, together with the money, to defendant at its office in the Fidelity Union Building, Dallas, in charge of Mr. B. F. Allen, defendant's state agent; later the same day, Rothschild delivered the document and paid the money to Mr. Allen. After the transaction with Mr. Rothschild, as above stated, Mrs. Murphy returned home, told Mr. Murphy what she had done, to which he assented.

The evidence warrants the conclusion that Mr. Murphy had enjoyed good health for a number of years preceding an attack of in-

fluenza in February or March, 1931; the influenza, however, left him with a bad heart affliction, and about May 21, 1931, his condition was pronounced serious by a heart specialist, who expressed the opinion that insured could not live very long. Insured ceased regular work three or four months prior to his death, which occurred June 21, 1931, but continued to be up and around; on Wednesday preceding his death Sunday morning, he drove 30 miles in the country, and the night before his death ate supper with his family about 6 p. m., had company until about 10 p. m., dying suddenly early next morning. Additional pertinent facts will be mentioned in their proper connections during the discussion.

Defendant filed a general denial, and specially pleaded that, under the facts, no binding contract was ever consummated, in that (a) its offer to insured was never accepted in the manner and form stipulated in the contract with the receiver; (b) insured not being in good health at the time, the stipulation of the contract (certificate) that it was not to become effective, unless delivered into the manual possession of Ernest C. Murphy while yet living and in good health, prevented the consummation of a contract; (c) the signing of the receipt or memorandum of ratification by Rothschild, without the knowledge, consent, or approval of the insured could not consummate the contract; and (d) the fraudulent act of Mrs. Murphy, in procuring Rothschild to sign the name of the insured to the document within 24 hours of the time of his death, was insufficient to effectuate a contract binding upon defendant.

In a supplemental petition, plaintiff alleged that defendant waived the health provision of the certificate quoted above, and was estopped to urge any defense predicated thereon, (1) in that, with full knowledge of all the facts, defendant denied liability on grounds other than that the health provision of the certificate had been violated; (2) because, under the terms of the agreement with Irwin, receiver, and also as stated in the memorandum of ratification prepared by defendant, a medical examination of insured, or any showing as to the condition of his health at that time, was expressly waived, it being understood that the certificate would issue on the basis of the condition of insured's health at the time (September 25, 1930) he was admitted to membership in the Texas Association, and (3) because at the time the premium or assessment was paid by Rothschild on behalf of insured, to defendant's agent, he knew that insured was not in good health.

At the conclusion of the evidence, defendant moved for an instructed verdict, which, being denied, the court submitted only one issue to the jury, i. e. as to waiver, as follows: "Do you find from a preponderance of the evidence that B. F. Allen, on the 20th day of June, 1931, on the occasion that the $10 check was delivered to him by E. Rothschild, knew that Ernest C. Murphy was not in good health? Answer 'yes' or 'no,' to which the jury answered 'yes'"; thereupon, having overruled defendant's motion for judgment, non obstante veredicto, the court rendered judgment for plaintiff, from which this appeal was taken.

■ We think it pertinent to state at this juncture that defendant made no request for the submission of any defensive issue, after its request for an instructed verdict was denied; the answer of the jury to the one issue submitted, involving waiver by defendant of the health provisions of the certificate relied upon as an independent ground of defense, being in favor of plaintiff, judgment was properly rendered in her favor, hence under the rule announced in Ormsby v. Ratcliff, 117 Tex. 242, 1 S.W.(2d) 1084, the other defensive issues, neither submitted nor their submission requested, were waived, and will be considered as found by the court in such manner as to support the judgment, if the evidence sustains the findings.

In view of these undisputed facts, we are of opinion that the health provision of the certificate, pleaded by defendant as a warranty, the breach of which it is claimed defeats recovery, should not be considered any part of the contract of insurance, and that defendant is estopped to rely upon its alleged breach as a defense. The absorption agreement with the receiver, approved by the court, obligated defendant to take over the membership of the Texas Association, without personal application by members or any showing as to health, except as revealed in the respective applications made by members to the Texas Association, upon which their membership therein was based. The facts are undisputed. Section 4 of the contract, quoted above, obligated defendant "to admit to its membership all of the members of the said Texas Association without further medical examination"; defendant's letter to the insured, calling attention to the absorption agreement, stated that it had been approved by the court, also by the commissioners of in-

surance of the states of Oklahoma and Texas; that its purpose was "to enable the entire membership of your (Texas) Association in good standing to be transferred to this association upon the payment of a special contingent assessment of $2.00 per thousand of maximum death benefits"; also that "the Association is waiving the usual membership fee and the medical examination and will place you in a group formed of Texas." The only showing required, as to good health, is found in section (4) of the receipt or memorandum of ratification, as follows: "Said benefit certificate issued by the National Aid Life Association shall not be binding upon said issuing association should it develop that I was not in good health at the date my benefit certificate was delivered to me by said Texas Association; or that I was not in good standing in said Association at the date said receiver was appointed."

■ Thus it appears indubitably that the provision of the certificate, reading that it should not be effective, "unless delivered into the manual possession of the applicant while he is still in good health," was an added provision, unauthorized by the absorption agreement which had been previously approved by an order of court, and constituted the basis or terms upon which members of the Texas Association would be admitted by the Oklahoma Association to its membership, one of these being that members of the Texas Association, in good standing, would be admitted "without further medical examination." So, as defendant expressly waived a medical examination as a condition precedent to the reception of members from the Texas Association, the condition of Mr. Murphy's health at the time of the transactions involved—whether good, bad, or indifferent—was an immaterial matter so far as defendant was concerned; hence we conclude that, as a matter of law, defendant is estopped by the undisputed facts to set up or rely upon said unauthorized provision, or its alleged breach, as a defense to plaintiff's cause of action.

■ Again, we think defendant waived the defense, if any it had, based upon the alleged breach of said health provision of the certificate, and is estopped to urge same, for the reason that, with full knowledge of all the material facts involved, defendant denied liability and refused payment of the claim upon certain specific grounds, other than the breach of the good health provision of the certificate, and failed altogether to urge or rely upon that matter, until long after plaintiff had employed counsel and filed this suit.

The undisputed facts bearing upon this phase of the case are these: With full knowledge of all material facts in regard to the last sickness and death of Mr. Murphy, defendant, acting through its president, addressed a letter to plaintiff, dated September 3, 1931, denying liability on two grounds, viz.: (1) That Mr. Murphy had not personally signed the receipt or memorandum of ratification; and (2) that he was not in good health on September 25, 1930, the date of his application to the Texas Association for membership, concluding the letter as follows: "Inasmuch as under the terms of the contract this Association has never had any liability, and inasmuch as there had been paid to the Association, by reason of said benefit certificate, the sum of Ten Dollars ($10) we herewith inclose our check, in your favor, for that sum, since it is not our policy to retain any sums received by the Association under a benefit certificate which does not allow the therein named beneficiary to recover in the case of death." After defendant denied liability and rejected her claim on the grounds specified, plaintiff engaged attorneys and instituted the present suit. The defense now urged, based upon the alleged breach of the health provision of the certificate, was set up and relied upon by defendant for the first time in its fourth amended answer filed in the court below January 10, 1933.

■ The general rule applicable to the subject under consideration is stated in 32 C. J. p. 1354, § 636, as follows: "Where the (insurance) company refuses to pay a loss upon a specific ground, it is estopped from asserting other grounds relieving it from liability of which it had full knowledge where insured has acted upon its position as announced and has incurred expense in consequence of it, or, as the rule is sometimes more broadly stated, when one specific ground of forfeiture is urged against a policy of insurance and the validity thereof denied on that ground alone, all other grounds are waived" (citing authorities). Also see Home Ins. Co. v. Fort Worth, etc., Co. (Tex. Com. App.) 269 S. W. 432; Webber v. Fidelity Lloyds (Tex. Civ. App.) 271 S. W. 118; Fidelity, etc., Co. v. Ray, 196 Ala. 425, 72 So. 98; Smith v. German Ins. Co., 107 Mich. 270, 65 N. W. 236, 30 L. R. A. 371, 372; Moore v. Nat'l Acc. Soc., 38 Wash. 31, 80 P. 171; Farmers', etc., Co. v. Ferguson, 78 Kan. 791, 98 P. 231, 233; Pennsylvania Fire Ins. etc. Co. v. Hughes (C. C. A.) 108 F. 497.

In Farmers', etc., Co. v. Ferguson, supra, the Supreme Court of Kansas, considering the identical question, said: "'Under these

circumstances it would be proper to instruct the jury, as matter of law, that the defenses were waived. Good faith required that the company should apprise plaintiff fully of its position, and, failing to do this, it estops itself from asserting any defense other than that brought to the notice of the plaintiff.' Possibly there is no technical estoppel here, but as we have seen, that is not necessary to a waiver which is based on grounds analogous to that of an election of defenses. The company, after subjecting the insured to the expense of an action, upon the belief, justly entertained, that it would interpose only the defense stated in refusing payment, ought not to meet the plaintiff with other defenses, of which it had the same knowledge when it refused to pay that it had of the one upon which it based its refusal. In such a case a frank statement of all the grounds of refusal might obviate the expense of commencing an action."

But if, notwithstanding the obligation of defendant to accept members of the Texas Association in good standing "without further medical examination" it can be correctly said that defendant had the right to impose on Mr. Murphy the warranty of good health contained in the certificate, then we are confronted with this question, Did defendant, with knowledge of his bad health, at the time of the consummation of the transactions involved, waive this precedent condition?

The jury found, in answer to the only issue submitted, that Mr. Allen, general agent of defendant, knew that Mr. Murphy was not in good health on June 21, 1931, when Rothschild paid the special assessment of $10 on behalf of insured.

However, defendant contends that there was no competent evidence justifying the submission, or the finding of the jury thereon. If the evidence adduced on the issue was competent, we think its submission was authorized and the finding sustained; hence it would follow that, defendant, having accepted payment of the special assessment, knowing Murphy was in bad health, the provision of the certificate under consideration was thereby waived, and defendant would be estopped to rely upon its alleged breach as a defense. See Home Forum Ben. Order v. Varnado (Tex. Civ. App.) 55 S. W. 364; Sovereign Camp, W. O. W. v. Carrington, 41 Tex. Civ. App. 29, 90 S. W. 921; Lee v. Mutual, etc., Ass'n (Tex. Civ. App.) 47 S.W.(2d) 402, 403. The above is based upon the assumption that the evidence, on the issue of waiver, was properly admitted over objections, but, if in this we should be mistaken, the ground of waiver now under consideration would simply pass out, but this fact would not, in our opinion, affect the result.

We will now consider the questions raised as to the admissibility of the evidence adduced on the issue of waiver. By appropriate assignments, based upon proper bills of exception, defendant contends that the court erred in permitting Mrs. Murphy and Mrs. Pyeatt to testify to the facts shown below; hence the contention that there was no competent evidence justifying the submission of the issue or the finding of the jury. The preliminary statement recites that, after Mrs. Murphy had arranged with Rothschild to furnish the money and pay defendant's general agent the special assessment and deliver the receipt or memorandum of ratification, she returned home, and later in the day a telephone message came from a person professing to be Allen of the National Aid, etc., stating, in effect, that Rothschild was present offering to pay for insured the premium or special assessment, and further that their reporter had just returned with the information that Mr. Murphy was sick; the person talking then asked Mrs. Murphy if her husband was seriously ill, to which she replied, "We hope not, but he had the flu in March, and heart trouble followed"; thereupon was asked, "Did he have this trouble when the policy was issued" (the policy with the Texas Association), to which witness replied, "He did not"; thereupon the person talking said, "We are going to issue, accept the money, and give you a receipt." Thereafter Mr. Rothschild gave to Mrs. Murphy the receipt mentioned. At the time of the conversation, Allen being unknown to Mrs. Murphy, he was not identified from the tone of his voice. Mrs. Pyeatt, a boarder in the home of the Murphys, testifying in regard to the same telephone call, said she answered the call when it came, that it was for Mr. Murphy, who was lying on a divan, who said, "Ask who is calling"; being told that the party said he was Mr. Allen with the National Aid, Mr. Murphy said, "Let Mrs. Murphy talk," so witness called Mrs. Murphy to the telephone and the conversation in regard to which she testified ensued. Mrs. Pyeatt did not know Mr. Allen, had never met him, hence did not identify him by his voice. This testimony was also admitted over defendant's objection that it was hearsay. Mrs. Pyeatt testified further that, on the morning in question, during the absence of Mrs. Murphy, a lady unknown to witness came to the Murphy home, said she represented the National Aid Life Association, asked for Mrs. Mur-

phy; being told that she had gone to town, then asked for Mr. Murphy; being told that he was asleep and not feeling well, requested witness to tell Mrs. Murphy to come down and pay the premium. The contract between defendant and the receiver made provision for an active field force of agents to facilitate the transfer of members from the Texas to the Oklahoma Association, in the following language: "The expense of an active field force of agents to effectuate and finish up the transfer of said membership to the fullest extent possible is to belong exclusively to first party (Oklahoma Association)." Mr. Allen testified that he sent out agents from his office to make collection of premiums in connection with the transfer of the Texas membership to the Oklahoma Association, and Mrs. Marriott, assistant secretary of the defendant, in Oklahoma, testified that Mr. Allen had been instructed to get in touch with the holders of certificates in the Texas Association.

In view of these facts and circumstances, we think the identity of Mr. Allen and that of the unnamed lady, as an agent of defendant were sufficiently shown to admit the evidence, and that the court committed no error in the respects mentioned. Mr. Allen was defendant's state agent, located in Dallas; the person calling for Mr. Murphy stated that he was such agent, that Rothschild, with whom Mrs. Murphy had previously arranged, was present and wanted to pay the special assessment for the insured, that one of their agents had returned that morning with the information that Mr. Murphy was ill; thereupon the conversation as to the present condition of Mr. Murphy's health ensued, and, after being told that Mr. Murphy was not thus afflicted at the time he became a member of the Texas Association, the person talking said, "We are going to issue, accept the money, and give you a receipt," and the receipt was actually issued and later given to Mrs. Murphy by Mr. Rothschild. We think the circumstances sufficiently identify Allen, defendant's agent, as the person talking over the telephone, and the unnamed lady, who visited the Murphy home during the absence of Mrs. Murphy, as defendant's agent, sent out by Allen to effectuate and finish up the transfer to defendant of the Texas Association members.

We recognize, as correct, the rule invoked by defendant, i. e., when a party, called over a telephone, depends entirely upon the word of the party calling as to his identity, the conversation ensuing is hearsay and inadmissible (authorities cited by defendant; Meyer Milling Co. v. Strohfeld, 224 Mo. App. 508, 20 S. W.(2d) 963; State ex rel. Strohfeld v. Cox, 325 Mo. 901, 30 S.W.(2d) 462). But where, as in the instant case, the connected and related facts and circumstances tend to reveal the identity of the party calling, the conversation is admissible. See Tex. Jur. Title Evidence, § 118, pp. 355, 356, and authorities cited,. including the American Nat'l Bank v. First Nat'l Bank, 41 Tex. Civ. App. 392, 92 S. W. 439, which seems to be directly in point. We therefore overrule all assignments and propositions pertaining to this matter.

Defendant contends further that its offer of membership to assured was never accepted in person; hence no binding contract ever came into existence. This contention is based on a provision of the receipt or memorandum of ratification, as follows: "I will not become a member of said National Aid Life Association unless I personally sign and mail this receipt while I yet live, together with remittance of a special contingent assessment of $2.00 per Thousand. * * *" The germane provision found in the contract between Irwin, receiver, and defendant, reads: "First party (defendant) will execute and tender by mail to each member of said Texas Association its own mutual benefit certificate for a like maximum amount of insurance as stipulated by the present benefit certificate held by each member of said Texas Association respectively, same to become effective however only as and when the respective members of the said Texas Association, while yet living and within 30 days after the receipt of the tendered benefit certificate, shall execute and return to the First Party an accompanying receipt for said benefit certificate (a copy of the receipt attached), agreeing to the acceptance thereof in lieu of any liability of said Texas Association under the benefit certificate now held by said member, and shall also remit a special contingent assessment of $2.00 per Thousand of maximum death benefits specified in said benefit certificate of First Party"; after which the accepting party shall be a member of defendant association, with all of the rights, benefits, etc.

The contention is made that Mrs. Murphy, and not Ernest C. Murphy, took the acceptance receipt to Rothschild's office and procured the funds with which to pay the required amount to defendant; that Mrs. Murphy, and not Ernest C. Murphy, procured Rothschild to sign assured's name to the ac-

ceptance receipt and deliver same to appellant's representative; and that these acts were legally insufficient to constitute an acceptance of the offer as made; and further that the conduct of Mrs. Murphy was fraudulent; in that, at that time, Mr. Murphy was upon his deathbed, Mrs. Murphy's sole purpose being to obtain $5,000 by procuring Rothschild to do the things necessary to create the semblance of an acceptance on the part of Mr. Murphy.

■ This issue was neither submitted to the jury nor did defendant request its submission, hence we must hold, the evidence being sufficient, that the issue was found by the court in such manner as to support the judgment.

■ The contract between the receiver and defendant prescribes no particular form or ceremony to be pursued in executing the receipt; this requirement is found only in the receipt prepared by defendant after the absorption agreement was entered into: "I will not become a member * * * unless I personally sign and mail this receipt," etc. The quoted provision of the receipt constitutes no part of the certificate or policy sued upon, but is a part of an outside paper, and a mere representation in no sense material to the risk; therefore the policy would not have been voided, even though the receipt was not executed precisely in the manner prescribed. See Goddard v. East Texas, etc., Co., 67 Tex. 69, 1 S. W. 906, 60 Am. Rep. 1; Queen Ins. Co. v. May (Tex. Civ. App.) 35 S. W. 829; American Nat'l Ins. Co. v. Hicks (Tex. Civ. App.) 198 S. W. 616; Maryland Cas. Co. v. Robertson (Tex. Civ. App.) 194 S. W. 1140; Cooley's Briefs on Ins. (2d Ed.) Vol. 3, p. 1873. However, we think the receipt or memorandum of ratification was executed substantially, and to all intents and purposes, as prescribed. The evidence is undisputed that, at the request of insured, Mrs. Murphy visited Rothschild and arranged with him to advance the necessary money to pay the assessment due; that, returning home, she advised her husband what she had done, and he approved her action. Mrs. Pyeatt's testimony, to the effect that, when the telephone message came from Mr. Allen, asking for Mr. Murphy, the latter said, "Let Mrs. Murphy talk," to some extent corroborates Mrs. Murphy. We think it reasonably appears that Mr. Murphy was cognizant of the happenings and acquiesced in what his wife had done. So, in the light of pertinent authorities, we are of opinion that the acts of Mrs. Murphy in the premises became, by adoption, the acts of the insured. In Mondragon v. Mondragon, 113 Tex. 404, 257 S. W. 215, 216, the Supreme Court, through Chief Justice Cureton, discussing a similar situation, said: "However, we are not basing this opinion upon the fact alone that the instrument was written and signed for the grantor in his presence and under his direction. In reaching our conclusion we have taken into consideration all the facts, and believe the contract valid by adoption. The rule that a deed, including the signature of the grantor, written by another, either in the presence or in the absence of the grantor, with or without his request, may become effective by adoption, prevails in this state. Newton v. Emerson, 66 Tex. 142, 145, 18 S. W. 348; Willis v. Lewis, 28 Tex. 185, 191; McAllen v. Raphael (Tex. Civ. App.) 96 S. W. 760, 763." To the same effect see Pardue v. Webb, 253 Ky. 838, 70 S.W.(2d) 665; Sheehan v. Kearney, 82 Miss. 688, 21 So. 41, 35 L. R. A. 102; Somers v. Kansas, etc., Union, 42 Kan. 619, 22 P. 702.

■ We fail to find in the record any justification for the charge of fraud against Mrs. Murphy. She knew, of course, that her husband was in a desperate condition of health, had been advised to that effect by their physician, but his sudden death occurring so soon after these transactions was in fact unexpected. However, as defendant was under obligation to accept all Texas members in good standing, without medical examination, the condition of Mr. Murphy's health, supervening after he was admitted to membership in the Texas Association, however desperate, did not concern defendant, therefore Mrs. Murphy could not properly be charged with fraud in failing to reveal the then condition of her husband's health, even if she had failed so to do (which we do not find), in that it was a matter in regard to which, by an express provision of the absorption agreement, defendant had pretermitted information or inquiry.

In a cross-assignment, plaintiff complains of the action of the court in striking out, on exception, that part of her petition seeking recovery of 12 per cent. damages and reasonable attorney fee, as authorized by article 4736, as amended in 1931 (Vernon's Ann. Civ. St. art. 4736).

After defendant had been issued a permit to carry on its insurance business in this state, under the provisions of chapter 5, title 78 (article 4781 et seq.), the 41st Legislature repealed chapters 5, 6, 9, 12, 13, 14, and 15 of title 78 (article 4781 et seq.; art. 4860 et seq.; art. 4933 et seq.), effective June 19,

1929 (see Acts 1929, 1st Called Sess., chapter 40, pp. 90–95 [Vernon's Ann. Civ. St. art. 4860a—1 et seq.]). The repealing section of the act of 1929 (see Vernon's Ann. Civ. St. art. 4860a—18) contains a saving clause in favor of insurance companies, then doing business, as follows: "Sec. 18. Chapters 5, 6, 9, 12, 13, 14, and 15 of Title 78, of the Revised Civil Statutes of 1925, and all other laws or parts of laws in conflict with the provisions of this Act, are hereby repealed; provided that such repeals and the provisions of this Act shall not apply to or affect any company or association of this State now doing business under the laws repealed, and they shall continue to be governed by the regulatory provisions of such laws. * * *"

The contention of plaintiff is based on the idea that the saving clause does not include foreign insurance companies, such as defendant, but applies only to domestic concerns, and that, since the effective date of the repealing act, defendant has conducted its business in Texas without authority of law. That this is a correct statement of plaintiff's position is revealed by the following excerpts from the written argument of her attorneys on file. They said: "It is manifest from the repealing act above quoted that the provisions of the statute excepting from its application only those companies or associations of this state which were then doing business under the laws repealed did not apply to foreign insurance companies and that no foreign company of the description contained· in the repealing act could thereafter do. business under the provisions of articles 4781, 4782 and 4783, the act repealed. * * * But appellee contends that, in view of the express and unambiguous provisions of the statute, withdrawing the right of the appellant company to. do business in Texas, no construction of the statute was necessary and the mere fact that the insurance commissioner without authority issued a license or permit to appellant did not have the effect to amend the statute and write an exception therein in favor of appellant and associations in like situation."

 We cannot accept as correct plaintiff's idea as to the meaning of the statute under consideration; on the contrary, believe that all associations and companies, domestic or foreign, legally doing business in the state when the statutes were repealed, were permitted by the saving clause, quoted above, to continue and have their permits renewed.

 Our courts have uniformly held that the penal provision of the insurance code, invoked by plaintiff (old article 4746, new article 4736), is not applicable to an insurance association or company, such as defendant, conducting business on the assessment plan. See International, etc., Ass'n v. Votaw (Tex. Civ. App.) 107 S. W. 237, 240; Pledger v. Business Men's, etc., Ass'n (Tex. Com. App.) 228 S. W. 110, 113.; Logan v. Texas Mutual, etc., Co., 121 Tex. 603, 51 S.W.(2d) 288, 292, 53 S.W.(2d) 299. In Logan v. Texas Mutual, etc., Co., supra, Commission A, through Judge Critz, answering certified questions, stated reasons for such construction he said: "Obviously the application of the above statute to this association would destroy it. It has no capital stock, no surplus, and makes no profit. The only claim a beneficiary has against the association is the right to require it to levy an assessment·on· the surviving members after the death of the certificate holder whose beneficiary he is: The association does not even guarantee that' such assessment will be paid, and· under the contract the amount ·of the assessment is fixed. If the association should be required to pay a 12 per cent. penalty, and an attor-' ney fee, there is no provision in the charter or the contract whereby the money. can be secured to pay the same, and we will not indulge the presumption that the Legislature intended to create ·a liability where no means are ·provided by law to meet it." The statute in question being highly penal in nature, must be strictly construed, so, even if it can be correctly said that a reasonable doubt exists, as to whether or not article 4736 is applicable, such doubt should be resolved in favor of the party sought to be mulcted.

Assignments urged by defendant are overruled, also the cross-assignment by plaintiff, and the judgment of the court below is in all things affirmed.

Affirmed.