AMERICAN OIL AND SUPPLY COMPANY, PLAINTIFF, v.
UNITED STATES CASUALTY COMPANY, DEFENDANT.

Decided December 5, 1940.

For the plaintiff, *John A. Laird.*

For the defendant, *Walter X. Trumbull.*

WILLIAM A. SMITH, C. C. J. This case came on for trial before me on October 31st, 1940, and was submitted to the court without a jury on the pleadings and an agreed statement of facts. The court heard argument and subsequently briefs were filed. The record consists of the pleadings and stipulation, which includes the record in a case in the Essex Circuit Court, Standard Embossing Plate Manufacturing Co. *v.* American Oil and Supply Co.

The defendant herein issued *its* indemnity policy to the plaintiff covering the operation of a certain auto truck owned by the plaintiff and referred to later, and this policy was in force on December 27th, 1935.

The policy insured the plaintiff against accidents "by reason of the ownership, maintenance, or use of any automo-

bile or trailer described in the schedules of statements, including the loading and unloading of such automobiles or trailer."

The accident involved in this suit is described in the stipulation as follows:

"2. That on said December 27th, 1935, an automobile truck covered under the terms of the aforementioned policy and owned by the plaintiff was used to transport certain merchandise consisting in part of two five-pint bottles of nitric acid, intended for a customer of the plaintiff, the Standard Embossing Plate Manufacturing Company, and that the driver of the said truck drove the truck to the place of business of that company and parked at the curb on the street, in front of its place of business.

"3. That the place where the truck driver entered was through a small steel door set within a large movable steel door, which large door permitted direct entrance of trucks into the place of business of the Standard Company and that the practice of the Standard Company in shipping out merchandise was to have its trucks alongside of this door and the embossing plates which they manufactured loaded on the truck through the opened large steel door. Upon occasion, merchandise was also delivered in this fashion although consignments of heavy merchandise were generally received at another entrance.

"4. That upon December 27th, 1935, the truck driver upon reaching the Standard Company's plant entered the plant through the small steel door; ascertained that the acid would be received in the room directly inside that door (known as the shipping or receiving room); went back to his truck, leaving the door open; carried both bottles of acid, one in each hand, into the room and placed both bottles down on a rack. The door was eight feet from the street curb and the rack was about seven feet inside the door.

"5. That the bottle which he had been carrying in his left hand broke at the time it was put on the rack, the said bottle not having been broken or leaking prior to its being placed on said rack. That the testimony indicates that the bottle was put down on the rack, immediately thereafter it was found to be broken; the acid from the bottle flowed over the

rack and that it damaged certain embossing plates stored beneath the rack.

"6. Thereafter an action was instituted by the Standard Company against American Oil & Supply Co. alleging negligence and this trial resulted in a verdict in favor of the plaintiff in the amount of $900 together with costs taxed in the sum of $103.47, which said judgment was entered and was actually paid by American Oil & Supply Co. under date of October 14th, 1937."

The complaint in the suit brought by the Standard Embossing Plate Manufacturing Company against the plaintiff alleged an accident as follows:

"In the course of the delivery aforesaid of said two bottles of nitric acid by the defendant, defendant through its servant, agent or employe aforesaid, caused one of said bottles to become broken and the contents thereof to be spilled over and upon the aforesaid thirty steel engraved embossing plates."

The defendant's attorney at the trial of this case moved for a direction of a verdict on two grounds: first, that no reference in the original action was made to a delivery by automobile and that therefore the plaintiff is estopped by the record of that case from claiming that the accident so occurred; namely, by reason of the ownership, maintenance or use of the automobile in question, including its loading and unloading; and secondly, that the accident was not covered by the policy.

On the question of estoppel, the defendant cites the case of *Stefus* v. *London and Lancashire Indemnity Co.,* 111 *N. J. L.* 6; 166 *Atl. Rep.* 339. In that case the plaintiff sued a policy holder of the defendant for injuries sustained as a result of the operation of the assured's automobile. The policy indemnified the assured only for injuries to third persons accidentally sustained. The complaint in the original action alleged negligence but the defendant insurance company in the cited case attempted to set up by way of answer that the original case was submitted to the jury on the question of whether or not the injuries sued for were sustained in the commission by the assured of a willful tort, which was not covered by the policy, not being an accident. The court

held, however, that the defendant was bound by the record, which alleged an accident and could not show the grounds on which the case was submitted to the jury.

The defendant here now attempts to claim that because the allegations of negligence in the complaint do not include any negligence in unloading that the plaintiff here is estopped by that record from recovering. It is my view that the principle in the cited case does not apply in the instant case so as to support an estoppel. The charge made by the Standard Embossing Plate Manufacturing Company was of damage in making a delivery and that was due to negligence. The policy covers damage done in unloading, which is part of a delivery and is not limited to negligence in unloading. Therefore the allegation of breach of duty on the part of the assured alleged in the complaint is immaterial so long as the damage was done in unloading which, as I have stated, is part of a delivery.

The defendant here is not in a position to urge this ground of estoppel because it is stipulated as to how the accident happened, so the facts with regard to the accident are in evidence before the court, and if these facts come within the policy coverage the plaintiff is entitled to recover.

The record of the recovery in this case does not hold the importance that the record of the recovery in the cited case had, because we are here dealing with a suit directly between the assured and the insurance carrier, and all that the assured has to prove is that he paid out money by reason of a liability incurred which was covered by the policy held.

I will deny the defendant's motion for a direction on the ground of estoppel and note its objection as ground of appeal.

The question remaining therefore is: Does the policy cover the accident described in the stipulation; or to state it more clearly: Do the facts show that the damage which was done to the property of the Standard Embossing Plate Manufacturing Company and for which they recovered against the plaintiff, was done in the unloading of the truck which was covered by the defendant's policy?

Counsel for defendant in his brief has given a dictionary definition of loading as "the act of putting a load on or in (as to load a beast of burden, a car or a vessel); hence, to

charge as with a load or burden;" and as the definition of unloading as "the act of discharging a cargo, taking the load from, to disburden, to remove from."

I do not know that I have any quarrel with these descriptions except that it seems to me that we cannot set down any rule as to what should be included in unloading, but we must treat each case separately according to the facts involved. The distinction must of course be clearly made between unloading and delivery. Delivery is more inclusive than unloading, and in determining what is unloading of the truck we must take into consideration its connection with the operation, maintenance and use of the truck; in other words, the unloading must be in reference to the operation, maintenance and use of the truck. It indicates, however, that it is an extension of the coverage rather than a limitation of the coverage of operation, maintenance and use.

The question of determination of what is or is not unloading under the terms of a policy such as we have here has been passed upon by two reported cases in this state: *Jackson Floor Covering, Inc.,* v. *Maryland Casualty Co.,* 117 *N. J. L.* 401; 189 *Atl. Rep.* 84, and *Zurich, &c., Ltd.,* v. *American Mutual, &c., Co.,* 118 *N. J. L.* 317; 192 *Atl. Rep.* 387.

The Jackson case was an appeal from a determination by Circuit Court Judge Ackerson on a motion to strike out the answer of the defendant as sham or frivolous. The policy in that case had a similar coverage, and a judgment had been obtained against the plaintiff. The action was a suit by the plaintiff against his insurance carrier to establish that the accident happened in the unloading of the truck covered by the defendant's policy. The assured's truck transported rolls of linoleum to a concessionaire in a market. The truck was stopped and the driver removed the rolls of linoleum, put them on a hand truck, and while wheeling the truck in the building where the concessionaire was located one of the rolls of linoleum dropped from the hand truck and injured a pedestrian.

Judge Ackerson held that the process of unloading had been completed in so far as the unloading was referred to by the terms of the policy and that therefore the accident was

disconnected from that operation and was not covered by the policy. Judge Ackerson's opinion has not been reported, but on appeal his determination was unanimously affirmed by the Court of Errors and Appeals in the case cited, Mr. Justice Bodine writing the opinion. He aptly puts the distinction between the unloading and the handling of the linoleum at the time of the happening of the accident and says (at *p.* 403):

"It appears that the unloading of the plaintiff's automobile truck had been completed, and that the transportation from then on was by a different means; hence, there could have been no concurrent coverage, since the carrier insuring the automobile truck was under no obligation."

The other case came before the court on a suit by one insurance company which had the coverage of liability other than the unloading, against the insurance company that had the coverage of the assured as to operation, maintenance and use of the truck, including loading and unloading. In that case the servant of the assured removed from the truck a can of milk and a cake of ice and placed the milk and ice in an icebox maintained in the interior of the premises of the consignee, and while chopping ice to pack the milk the assured's truckman struck someone with his pick, causing the damage for which the recovery was had.

In that case the Supreme Court in an opinion by Mr. Justice Heher held that the accident did not happen in the unloading of the truck and therefore the policy covering unloading did not apply. Mr. Justice Heher in that case, in determining that the accident did not happen in the unloading, says as follows:

"We have no occasion to determine whether an accident occurred in the case of the 'loading or unloading' of a vehicle within the policy coverage or anything connected with its 'maintenance, use or operation,' within the intendment of the plaintiff's policy. Here the unloading of the merchandise had been completed when the accident occurred. The assured's servant was engaged in the servicing of the delivered milk upon Borer's premises, an act entirely disconnected from the unloading of the article from the vehicle."

It is my view that these two cases are clearly distinguishable from the case which I am now considering. An accident to have occurred in the unloading of a truck must occur after something is done to change the conditions from the transportation or the mere standing of the truck after it is stopped, and as commonly understood it is the removing of the load or the part that is being unloaded, from the time that that operation is started until that operation is finished. And it is my view that the operation of unloading in the instant case continues from the time the bottles started to be moved on the truck so as to start unloading until they next came to rest off the truck. It appears by the stipulation that they were removed by the driver and that they continued in motion until he set them down on the counter. And it is my determination that the accident happened in the placing of one of the bottles on the counter and therefore it happened while this bottle which had been transported in the truck was being unloaded, and I so find as a fact, my view being that the bottle was broken in the placing of the bottle on the counter.

Similar provisions of the policy under consideration here have been passed upon by the Supreme Court of Wisconsin. In the case of *Stammer* v. *Kitzmiller*, 276 *N. W. Rep.* 629, the court, referring to the process of unloading, states as follows:

"When the goods have been taken off the automobile and have actually come to rest, when the automobile itself is no longer connected with the process of unloading, and when the material which has been unloaded from the automobile has plainly started on its course to be delivered by other power and forces independent of the automobile and the actual method of unloading, the automobile then may be said to be no longer in use."

If we apply this very clear description of unloading to the case here under consideration, it will be plainly seen that the driver and the automobile and the article being transported are all connected, and that until the driver has completed the act of removing the load, the coverage extends, and this removal does not stop until the article unloaded has come to rest. The accident having happened in the driver's attempt

to put the bottle at rest in removing it from the truck, the accident must be held to have happened in the unloading of the truck.

The motion for a direction of a verdict in the defendant's favor on the second ground urged will be denied and a verdict is found in favor of the plaintiff against the defendant for the amount of the judgment and costs together with interest.