## AMERICAN EMPLOYERS' INS. CO. v. BROCK.

### No. 13943.

Court of Civil Appeals of Texas. Dallas.

Oct. 22, 1948.

Rehearing Denied Nov. 19, 1948.

R. T. Bailey, of Dallas, for appellant.

Johnson, Rembert & Marshall, of Dallas, for appellee.

LOONEY, Justice.

The statement below, in our opinion, is sufficient for an understanding of the nature of the case, but during the discussion additional pertinent facts will be stated. At the request of appellant, the trial court filed elaborate findings which are before us unchallenged.

The record discloses that on June 20, 1946, Mrs. Lona Livingston fell into a sidewalk elevator shaft in front of De George's Restaurant on Commerce Street in the City of Dallas and sustained personal injuries. Mrs. Livingston first made claim for damages for her injuries against De George's Restaurant and, after that claim was disposed of, made claim against Mrs. Brock, the appellee, who thereupon requested American Employers' Insurance Company, the appellant, to take over the claim and dispose of same; but this, for the reason hereinafter stated, the company refused to do. Mrs. Brock then settled with Mrs. Livingston, paying her $1,200, and incurred in connection therewith an attorney's fee of $250. This suit was to recover those amounts from the insurance company, Mrs. Brock contending that the claim of Mrs. Livingston was within the purview of an automobile insurance policy which the company previously had issued to F. A. Brock, the deceased husband of appellee. The trial was before the court without a jury and resulted in a judgment in favor of Mrs. Brock against the company for the full amount sued for. The company timely perfected this appeal.

The following provisions of the policy are brought under review: "Coverage A—bodily injury liability—to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance, or use of the automobile." Item 5 of the policy provides: "The purposes for which the automobile is to be used are * * * commercial." Paragraph I under "Conditions" of the policy provides in part as follows: "* * * (b) The term 'commercial' is defined as use principally in the business occupation of the named Insured, as stated in Item 1, including occasional use for personal, pleasure, family, and other business purposes. (c) Use of the automobile for the purposes stated includes the loading and unloading thereof." (S.F. 65)

In appellant's first point of error the contention is made that "The injuries sustained by Mrs. Livingston did not grow out of either the loading or unloading of the truck being operated by Mrs. Brock's employees, and, therefore, were not within the purview of the contract issued by American Employers' Insurance Company to F. A. Brock, deceased."

The parties agree that the question presented, that is, the proper construction to be given the "loading and unloading" clause of the Texas Standard Form of the Public Liability Policy, is of first impression in this State. However, the construction of this clause of the liability policy has been the subject of considerable litigation in other states and many of these cases are annotated and discussed in 160 A.L.R. 1259,

under the title "Risks within 'loading and unloading' clause of automobile liability insurance policy." The cases are in two categories: Those following the "coming to rest" theory and those following the "complete operation" theory. Respectable authorities will be found sustaining each of these theories. Appellant contends for the application of the "coming to rest" theory, while appellee relies upon the "complete operation" theory.

Typical of the reasoning of decisions supporting appellant's contention is that of the Supreme Court of Pennsylvania in Ferry Bros. v. Protective Indemnity Co., 155 Pa.Super. 266, 38 A.2d 493, 494. The facts show that the accident complained of grew out of and was incidental to the reasonable and necessary preparation by the driver before the truck could be loaded. The insurance company contended that the accident was not within the loading and unloading clause of the contract. In sustaining this contention, among other things, the court said: "To bring the accident within the 'loading and unloading' clause of the policy there must be a connection between the accident and the use of the vehicle insured. The vehicle must have been directly connected with the work of loading; or it must have been an active factor in the operation. * * * in the present case neither the ashes, nor the container in which they were carried, nor the insured truck was the cause of, or involved in, the accident. The instrumentality that caused the accident was the cellar door. This was merely a convenience preparatory to loading, and was not, under the facts, included in the process of loading the truck." To the same effect see Stammer v. Kitzmiller, 226 Wis. 348, 276 N.W. 629, by the Supreme Court of Wisconsin. Also Franklin Co-op. Creamery Ass'n v. Employers' Liability Assurance Corp., 200 Minn. 230, 273 N.W. 809, by the Supreme Court of Minnesota.

On the other hand, typical of the reasoning of courts that construe the "loading and unloading" clause of these contracts according to the "complete operation" theory, is that by the Supreme Court of the State of Utah in Pacific Automobile Ins. Co. v. Commercial Cas. Ins. Co., 108 Utah 500, 161 P.2d 423, 424, 160 A.L.R. 1251. The court said in part: "* * * The so-called 'loading and unloading' clauses in insurance contracts have been frequently considered and construed by the courts and various rules have been stated. Practically all authorities are agreed that in such insurance contracts the phrase 'including loading and unloading' is a phrase of extension. It expands the expression 'the use of the truck' somewhat beyond its connotation otherwise so as to bring within the policy some acts in which the truck does not itself play any part. It deals with a period when the truck itself is at rest, but the goods are being moved onto or off the truck. American Oil & Supply Co. v. United States Casualty Co., 18 A.2d 257, 19 N.J.Misc. 7. * * * Some courts apply the 'coming to rest' rule or doctrine. Briefly stated, that rule is that 'unloading' includes the process of removing or lifting the articles from the truck up to the point where the article is first set down or ceases in the movement which took it from the truck. This doctrine is well stated in Stammer v. Kitzmiller, supra, a case very similar to the one at bar. * * * Other courts have adopted what may be called the complete operation rule. Tersely, this includes as 'loading' or 'unloading' the entire process involved in the movement of the articles from the place where insured's employees find the articles which are to be moved by truck, to the place where the employees of insured turn them over to the party to whom they are to make delivery. This rule is well stated by the Montana court in State [ex rel. Butte Brewing Co.] v. District Court, 110 Mont. 250, 100 P.2d 932, 934, a case differing from the instant one only in the fact that the person injured was standing on the door of the manhole when it was raised. * * * The necessary causal relationship between the use of the truck and the accident is apparent in the fact that the accident occurred in the course of making a commercial delivery in which delivery the use of the truck was an active factor or element. We conclude that the proper rule of construction of policies such as here involved is that the mission, or transaction, or function being performed by the insured's employees at the time of the ac-

cident is the controlling element in determining whether the situation from which the accident occurred is included in loading and unloading. The job being performed here, that part of the insured's business functioning at the time of the accident was that of making a proper commercial delivery. * * *"

It would lengthen the opinion unduly to quote from other cases to the same effect; hence they are cited without quotation, as follows: Maryland Casualty Co. v. Tighe, D.C., 29 F.Supp. 69, affirmed by Ninth Circuit Court of Appeals, 115 F.2d 297; State ex rel. Butte Brewery Co. v. District Court, 110 Mont. 250, 100 P.2d 932 (by Supreme Court of Montana); Schmidt v. Utilities Ins. Co., 353 Mo. 213, 182 S.W.2d 181, 154 A.L.R. 1088 (by Supreme Court of Missouri); B & D Lines v. Citizens Cas. Co., 181 Misc. 985, 43 N.Y.S.2d 486, and Washington Assurance Corp. v. Maher, Pa., 31 Del.Co.R. 575. Also see Connecticut Indemnity Co. v. Lee, 1 Cir., 168 F.2d 420.

■ The fact that construction of the "loading and unloading" clauses of these insurance contracts has provoked such a conflict in the decisions of the courts as to establish two rules or theories of construction, that is, the "coming to rest" theory and the "complete operation" rule or theory, shows inescapably that the language employed is considered ambiguous and susceptible of more than one construction; hence should be interpreted liberally in favor of the insured and strictly against the insurer who wrote the policy. This doctrine, well settled in this State, is stated in 24 Tex. Jur., p. 705, sec. 29, as follows: "It is a settled principle of insurance law, laid down in a host of decisions that language of a policy which is susceptible of more than one construction should be interpreted strictly against the insurer and liberally in favor of the insured. * * * In other words, when a contract is capable of two constructions, under one of which recovery is allowed and under the other of which it is denied, the construction will be given which permits recovery (Citing cases)." In Bobier v. Nat'l Cas. Co., 143 Ohio St. 215, 54 N.E.2d 798, 801, the Supreme Court of Ohio held that the phrase "loading and unloading" was ambiguous and gave it a construction favorable to the insured. In view of the authorities and the reasons above stated, we overrule appellant's first point of error.

In its second point of error appellant contends that "The contract issued by American Employers' Insurance Company to F. A. Brock, deceased, was not in effect at the time Mrs. Livingston sustained her injuries. Mr. Brock having died more than sixty (60) days prior to such date, and Mrs. Brock having failed to give the insurance company notice in writing of such fact as required by the contract."

Appellee urges four counterpoints in answer to the point of error just set out, as follows: (1) That by its letter of December 6, 1946, wherein appellant denied liability on the sole ground that the policy did not cover this kind of accident, it waived any defenses that it might have had based on the expiration of the policy because of appellee's failure to give written notice to appellant of her husband's death; hence is estopped to assert such as a defense; (2) that appellant through its authorized agent, John H. Beachum, had actual knowledge of the death of appellee's husband on the day he died and that prior to the accident involved in the case Mr. Beachum wrote, at appellee's request, an endorsement on the policy changing its coverage from one truck to another and mailed such endorsement to the appellee; further, the appellant has never tendered a return of any unearned premium; hence by such conduct waived any defense it might otherwise have had by reason of the lack of written notice of the death of appellee's husband and is now estopped to urge such defense; (3) that to the extent appellant is now contending that irrespective of written notice of F. A. Brock's death the policy expired by its own terms sixty days after Brock's death, such defense (now raised for the first time and not based on any pleading) was waived, as it may not be raised for the first time in this court; (4) that condition 22 of the policy expressly extends coverage to appellee as independent executrix of the estate of her deceased husband, subject only to the notice of death as required in said condition.

The facts pertaining to the subject or subjects under consideration are these: In consideration of a premium of $49.20, appellant on October 1, 1945, issued to F. A. Brock, deceased, the public liability policy sued upon, covering a one-and-one-half ton 1940 Chevrolet truck, effective for one year. Mr. Brock died on January 10, 1946; was survived by his widow, the appellee, who on April 1, 1946, was appointed independent executrix of her deceased husband's estate by the County Court of Dallas County. This suit was brought by her individually and as executrix of said estate. The policy in question was countersigned for appellant by John H. Beachum, an authorized agent. Mr. Beachum handled the writing of a large part of Mr. Brock's insurance, knew of his death the day he died, and at that time was carrying five different policies on five different vehicles of Mr. Brock in appellant company. All policies had expired at the time of the trial. Mr. Beachum permitted each policy, including the one in this suit, to continue as it was written until it expired on its expiration date, and then wrote new policies in appellant company in appellee's name. On May 11, 1946, prior to the accident in question, at appellee's request Mr. Beachum made an endorsement on the policy in suit, transferring coverage from the one-and-one-half ton 1940 Chevrolet truck to the 1946 Chevrolet truck that was being driven at the time of Mrs. Livingston's injury. Appellant company collected and retained the full premium on the policy in question, as well as on all other policies. The record further discloses that Mrs. Livingston was injured on June 20, 1946; that at the time her injuries did not appear serious, as she was able to get up and leave the basement without assistance. Appellee's employees reported the accident to their immediate boss, Mr. Wilson, but as he believed the accident was trivial, did not report it to the appellee. She first heard of the accident in September and then reported it to Mr. Beachum who reported same to the appellant on September 12. Subsequently, Mr. Beachum advised appellee that appellant refused to defend the Livingston claim, the only reason given being that "they weren't liable for that kind of accident." On De-

cember 6, 1946 Appellee's attorney wrote appellant advising it of appellee's contention, in response to which her attorneys received a letter from appellant, dated December 9, 1946, stating: "Gentlemen: This will acknowledge receipt of your letter of December 6th with enclosure. Since this accident was in no way connected with the use or operation of the insured truck, we must decline coverage and cannot protect Mrs. Brock for any claim that might be made against her in connection with this accident, or defend on her behalf, any suit that might be brought in connection therewith."

After receiving this communication, appellee settled with Mrs. Livingston as heretofore set out; and it was not until after the settlement had been consummated, expenses incurred, and this suit filed by the appellee, that the appellant raised any of the defenses herein relied upon—except the one stated in the letter of December 9 to the effect that the policy did not cover this kind of accident. Condition 22 of the policy, brought under review at this point, reads: "Assignment. Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the named Insured shall die or be adjudged bankrupt or insolvent within the policy period, this policy, unless cancelled, shall if written notice be given to the Company within sixty days after the date of such death or adjudication, cover (1) the named Insured's legal representative as the named Insured, and (2) under coverages A and B, subject otherwise to the provisions of Insuring Agreement III, any person having proper temporary custody of the automobile as an Insured, and under coverage X while the automobile is used by such person, until the appointment and qualification of such legal representative, but in no event for a period of more than sixty days after the date of such death or adjudication."

The letter of December 9, 1946, in our opinion, constituted waiver on appellant's part of all defenses urged by it, except the defense that the policy did not cover the kind of accident sustained by Mrs. Livingston, which we have discussed

and decided adversely to the contention of appellant. 24 Tex.Jur., p. 911, sec. 170, is cited; also National Aid Life Assn. v. Murphy, 78 S.W.2d 223, 227, by this Court (app. dismissed). In that case, among others, the following statement was made: "(5) The general rule applicable to the subject under consideration is stated in 32 C.J., p. 1354, § 636 [45 C.J.S., Insurance, § 707], as follows: 'Where the (insurance) company refuses to pay a loss upon a specific ground, it is estopped from asserting other grounds relieving it from liability of which it had full knowledge where insured has acted upon its position as announced and has incurred expense in consequence of it, or, as the rule is sometimes more broadly stated, when one specific ground of forfeiture is urged against a policy of insurance and the validity thereof denied on that ground alone, all other grounds are waived' (Citing authorities)." See also Great American Indemnity Co. v. McMenamin, Tex.Civ.App., 134 S.W.2d 734 (app. dismissed); and Great American Accident Ins. Co. v. Roggen, Tex.Civ.App., 144 S.W.2d 1115. Furthermore, we think Mr. Beachum's conduct in treating this policy as alive and in force, by making an endorsement changing its coverage from one truck to another and mailing such endorsement to the appellee, also constituted waiver of any defense appellant might otherwise have had based upon expiration of the policy through lack of notice or otherwise. See 24 Tex.Jur., sec. 116, p. 826.

■■ Condition 22 of the policy, heretofore quoted, is here referred to. It is clear, we think, that the phrase at the end of the condition, reading "But in no event for a period of more than sixty days after the date of such death or adjudication," refers only to a sixty-day limitation on protection for "any person having proper temporary custody of the automobile" pending appointment of a legal representative. We think it would be unreasonable to hold that this provision has application to appellee, as contended by the appellant, as condition 22 of the policy does say—and very clearly—that it gives protection up to its expiration day to the assured's legal representative, providing written notice of death is given to the company within sixty days. It

follows, therefore, that under the terms of the policy, appellee, as independent executrix of the estate, became a named insured, subject only to the written notice provision which we submit was clearly waived under the authorities heretofore cited.

■■ At the trial appellant did not contend, irrespective of written notice of Mr. Brock's death, that by its own terms the policy expired sixty days after his death; but raises that question for the first time in this court, which we do not think is permissible. See 3 Tex.Jur., p. 168, where it is stated: "It is an established principle of appellate procedure that the parties are restricted to the theory on which the case was tried in the lower court." We therefore overrule appellant's second point of error.

■ In its third point of error appellant contends that "Mrs. Brock did not give notice to the insurance company of Mrs. Livingston's fall 'as soon as practicable,' and thus breached the provisions of the contract sued on."

In answer to the above point of error appellee urges two counterpoints as follows: (1) That three months delayed notice of the accident given by appellee to appellant was timely, under the circumstances; and (2) that by its letter of December 9, 1946, wherein appellant denied liability on the sole ground that the policy did not cover this kind of accident, it waived any defense based on delayed notice of the accident, as now contended.

The statements heretofore made, in our opinion, are adequate in support of these points. The authorities heretofore cited on waiver and estoppel are here referred to and, in our opinion, are sufficient. Relative to whether or not notice of the accident was timely, attention is called to the fact that the only reason appellee's employees did not report the accident to her was that they considered Mrs. Livingston's injuries trivial. The record further discloses that as soon as appellee received notice of the accident she reported same to appellant.

In 76 A.L.R. 46, a number of authorities are cited to the effect that the provision in policies requiring immediate notice of an

accident is complied with if the assured gives notice as soon as same is received; as soon as the assured receives a claim from the injured party. One of the cases cited is Maryland Casualty Co. v. W. C. Robertson, & Co., Tex.Civ.App., 194 S.W. 1140, where the assured gave notice of the accident two days after filing suit and service of citation; the court held that the requirement as to notice was fully complied with. In 76 A.L.R. 117 the rule is announced that: "Ignorance or doubt as to accident or injury being one of a character covered by the policy, or one on account of which the assured can be held liable; belief that no claim will be made, or can be successfully made, against the assured. * * * 'While the language * * * requiring immediate notice of "an accident" is absolute, and, if construed with technical literalness, is broad enough to require immediate report of every occurrence which might in any sense come within the general meaning of "an accident," still * * * it would seem unreasonable to require report of such occurrences as would appear to have no reasonable relation to the subject matter of the policy, or not at all likely to result in any claim or liability.' Texas Glass & Paint Co. v. Fidelity & Deposit Co., Tex.Com. App., 1922, 244 S.W. 113 (public liability, the assured being a manufacturer—affirming judgment for insurer of trial court, and Tex.Civ.App., 1920, 226 S.W. 811—the supreme court later adopting this judgment and entering it as its own.) * * *." We therefore overrule appellant's third point of error.

The facts stated herein and the conclusions reached are in harmony with the findings and conclusions filed by the trial court, and failing to find reversible error its judgment is affirmed.

Before concluding, we wish to express our appreciation to the attorneys for their very clear and able briefs. They enabled us to reach a ready understanding of the case and were helpful in furnishing material utilized in writing the opinion.

Case affirmed.

## On Rehearing.

In appellant's motion for rehearing the Court is criticised for its failure to make a full and understandable statement of the nature of the case. After reading the original opinion in connection with the criticism, we have reached the conclusion that the statement made in the opinion should have been fuller and more complete. However, the rather meager statement given in the original opinion was copied substantially from the statement of the nature of the case appellant furnished this Court in its brief.

In compliance with the criticism of appellant in this respect, we make the statement below as an addendum to the statement given on page one of the original opinion, and for that purpose copy literally from appellant's brief the following: "Mr. Brock operated a hog farm, and after his death Mrs. Brock continued in that business. They had some kind of a contract with DeGeorge's restaurant, located on Commerce Street in downtown Dallas, whereby they picked up its wet garbage in cans, leaving the cans they had carried away on the previous trip. Shortly after 7:00 A.M. on June 20, 1946, Mrs. Brock's employees stopped the garbage truck on Commerce Street a short distance from DeGeorge's restaurant for the purpose of securing garbage, and leaving the empty cans they had. In preparation for this work, they opened a sidewalk elevator shaft. The covering for the elevator shaft, when closed, formed a part of the sidewalk. This covering was in two (2) parts, each hinged and they could be raised into upright positions across the sidewalk. There were iron bars, or cross bars, that could be fastened to the top of each part of the covering in the upright position, and would also serve as guards on the open ends of the shaft. After this had been opened Mrs. Brock's employees climbed down it to get the cross bars. Almost immediately Mrs. Lona Livingston fell down the shaft, and sustained personal injuries. Nothing had been either loaded onto the truck or unloaded off of it at the time Mrs. Livingston fell."

In paragraph four of appellant's motion for rehearing the contention is made that the Court erred in holding that notice to appellee's employees of the injury sustained by Mrs. Livingston did not constitute notice to Mrs. Brock herself. We did not explicitly make any such holding. The provision of the policy under review is that notice be given of such an injury "as soon as practicable." Our opinion states fully the facts with reference to notice, the character of the injury, etc., and under all the circumstances we held that giving notice as soon as Mrs. Brock had actual notice of the injury complied with the provisions of the policy. The question of the effect of constructive notice to Mrs. Brock through her employees did not enter our consideration as we did not think that rigid rule applicable under the rather loose liberal provision of the policy.

We do not think either of appellant's assignments for rehearing is well taken; therefore its motion is overruled.