See, also, 29 F.Supp. 986.

David Burstein, Hale & Dorr, and Harry B. White, all of Boston, Mass., for plaintiff.

John J. Burns, Gerald May, and Burns & Brandon, all of Boston, Mass., for defendants United Corporation & Mexican Petroleum Corporation.

William F. Byrne and Tyler, Eames & Reynolds, all of Boston, Mass., for defendants Lawrence B. Dunham and C. Thomas Dunham, ex'rs of Will of Annie S. B. Dunham.

## MARYLAND CASUALTY CO. v. UNITED CORPORATION OF MASSACHUSETTS et al.

## SAME v. MEXICAN PETROLEUM CORPORATION et al.

Civ. A. Nos. 34, 35.

District Court, D. Massachusetts.

Nov. 4, 1940.

SWEENEY, District Judge.

These two cases were tried together, and the facts in each are sufficiently identical to permit disposing of them as one.

The actions were brought under the Federal Declaratory Judgment Act, 28 U.S.C.A. § 400, seeking an adjudication of rights and liabilities under an automobile

insurance policy issued to the defendants, United Corporation of Massachusetts, hereinafter referred to as the United Company, and the Mexican Petroleum Corporation, hereinafter referred to as the Mexican Company.

### Findings of Fact.

The parties have submitted an agreed stipulation of facts which the court adopts as its findings of fact. In addition thereto, the court makes such additional findings as appear herein.

The plaintiff issued a liability policy insuring the defendants' motor vehicles for the calendar year 1932 to the extent of their interest in them. Under the terms of the policy, the plaintiff agreed to defend or settle all suits or legal proceedings brought against the assured, and to indemnify it against loss by reason of liability to pay damages under the conditions named in the policy. The policy limits were $20,000 and $40,000 for personal injury and $5,000 for property damage.

The Mexican Company was engaged in the business of selling fuel oil. It contracted with one Dunham for delivery of oil to the Dunham premises, an apartment house. Hayes, a commission agent for the Mexican Company, was in control of its plant in Cambridge, and contracted with the United Company to make deliveries for the Mexican Company to the Dunham apartment house. Oil was delivered as need arose and without specific instructions.

On April 6, 1932, about 9:30 a. m., the United Company made one of its routine deliveries to the Dunham apartment house through a hose running from its truck to the Dunham filler pipe. At 10:30 a. m., after the delivery had been made, and the truck had been driven away, an explosion occurred in the apartment house, with a resulting fire which caused damage to the person and property of Dunham's tenants. A little later, while the fuel oil was being pumped out of the tank in the apartment house where the explosion had occurred, it was observed that oil was running out of leaks in the bottom of the tank located in the apartment house, and that buckets had been placed under the tanks to receive the leaking oil. There was no evidence to indicate that these leaks had any connection with any faulty unloading by the United Company.

Shortly thereafter the Dunham tenants brought suit against Mrs. Dunham, and in 1934 obtained judgments against her to the extent of $6,700 for personal injury and $11,649 for property damage. Thereafter she paid these judgments and costs. Another insurance company, covering the apartment house with a public liability policy, reimbursed her to the extent of the judgments and costs incurred on account of the personal injuries.

On April 5, 1938, the Dunham executors filed suit in the Superior Court of Middlesex County against the defendants, the United Company and the Mexican Company. Counsel for the defendants here, in open court, waived any claim that the plaintiff must defend the Dunham actions so far as they are based on personal injury claims, but insisted that, under the terms of the motor vehicle insurance policy, and particularly under the "loading and unloading" clause, the plaintiff insurer is bound to defend the Dunham property damage suits. That clause in the policy insures against "damages * * * to property * * * resulting from an accident occurring * * * and arising out of the ownership, maintenance, or operation of any motor vehicle * * * or by the loading or unloading of merchandise carried on any such motor vehicle."

The question then is this: Are the property damage claims set out in the Dunham suit against the United Company and the Mexican Company such as reasonably come within the terms of the policy issued by the plaintiff?

The plaintiff denies that it is bound to defend these suits on three general grounds: First, because it did not receive proper notice from the defendants under the terms of the policy; second, that the Dunham claims do not constitute a "liability imposed by law upon the named Assured for damages * * * to property"; and, third, because the claims set out in the Dunham suits do not purport to be claims for damages caused "by the loading or unloading of merchandise carried on any such motor vehicle". Passing the first two grounds upon which the plaintiff bases its right to be freed from the liability of defense and indemnity, it is apparent that the injuries for which the Dunham executors seek recovery in the State courts against these defendants did not grow out of the "loading or unloading of merchandise" carried on the insured motor vehicle.

In Maryland Casualty Co. v. Tighe et al., D.C., 29 F.Supp. 69, the court held that the company was bound to defend an action brought in the State courts where it appeared that a person was injured by colliding with one of the truck employees who was carrying vegetables from the truck to a house. The court rejected the theory that unloading is complete when the goods leave the truck, and found in substance that the "unloading" continued until the goods being unloaded came to rest at their destination. In the instant case the oil unloading was completed when the oil came to rest in the Dunham tank.

In Caron v. American Motorists Ins. Co., 277 Mass. 156, 178 N.E. 286, 287, the court held that an insurance company was not bound to indemnify the insured for a judgment based upon injuries received by a pedestrian who, in passing on a crosswalk behind the insured vehicle which was not in motion, fell and was injured when he slipped on a piece of ice which had broken from cakes being removed from the truck and had fallen to the crosswalk. While this case did not involve a loading and unloading clause, the court decided that in order to hold the insurance company liable for damages under a motor vehicle policy it must appear that there was a causal connection between the operation or maintenance of the motor vehicle and the injuries for which the judgment was rendered. The court pointed out that the truck was not in motion, that the injury did not result from the truck being stationary on the public highway, and that the accident might "as well have resulted from such conduct in connection with a horse-drawn or hand-pushed vehicle. It had no peculiar or necessary connection with a motor vehicle as such."

Again in Mullen v. Hartford Accident & Indemnity Co., 287 Mass. 262, 191 N.E. 394, the court pointed out the necessity for a causal relation between the operation of the motor vehicle and the injury. It held the insurer liable for a judgment where the injuries arose from slipping on oil that had negligently been allowed to escape from a crack in the crankcase of the insured motor vehicle. The court distinguished the result in this case from that reached in the Caron case, and pointed out that the escape of oil was peculiar to automobiles and intrinsically related to the machine itself. While the case did not involve the unloading clause it, nevertheless, again affirmed the rule that in order to recover against the insurer there must be a causal relation between the operation and maintenance of the motor vehicle and the injuries which formed the basis for the judgment against the owner of the vehicle.

The cases cited by the defendants in support of their contention, namely, State of Montana ex rel. Butte Brewing Company v. District Court of the Second Judicial District, Mont., 100 P.2d 932; Wheeler v. London Guarantee & Accident Co., 292 Pa. 156, 140 A. 855; Maryland Casualty Co. v. Tighe et al., supra, all involved a "loading and unloading clause" similar to the one contained in the plaintiff's policy, but the decisions in those cases, closely following the reasoning of the Massachusetts courts, indicate the necessity for a causal relation between the injury and the process of unloading the motor vehicle. In each of the cases cited the injuries occurred while the process of unloading was going on. Since the unloading was not completed until the goods reached their ultimate destination, where the injuries occurred while the goods were in transit between the motor vehicle and the final destination the courts held that such injuries were covered by the unloading clause, and were necessarily connected with the operation of unloading the insured motor vehicle.

On the evidence presented, I am unable to find that the explosion and fire in the Dunham apartment house was caused by or connected with the unloading of oil from the United Company truck into the tank in the Dunham apartment house. The function of the truck was to deliver oil to the apartment house. This it did, and, having completed its delivery, drove away. The explosion which occurred after the truck had left the premises was not something that arose out of the ownership, maintenance, or operation of the motor vehicle, or by the loading or unloading of merchandise carried on such motor vehicle.

### Conclusions of Law.

I therefore rule that the property damage for which recovery is sought in the State court actions is not covered by the plaintiff's insurance policy, and that it is under no liability to defend the State court actions or to indemnify the defendants against loss by reason of any liability to pay damages in those actions.