HARVEY SCHMIDT v. UTILITIES INSURANCE COMPANY, a Corporation, Garnishee of FLEMING-YOUNG COAL COMPANY, a Corporation, Appellant, and VICTOR PACKMAN, Assignee and Trustee.—No. 38989. —182 S. W. (2d) 181.

Division One, July 3, 1944.

Rehearing Denied, September 5, 1944.

214

*John S. Leahy, John J. Nangle, George Gantner* and *William O'Herin* for appellant.

*Donald Gunn, Frank P. Aschemeyer, James A. Waechter* and *Mark D. Eagleton* for respondent.

DALTON, C.—Garnishment proceeding in aid of an execution under a $15,000 judgment against the Fleming-Young Coal Company (hereinafter referred to as Coal Company). Defendant Victor Packman, assignee and trustee under an assignment for the benefit of creditors of Coal Company, disclaimed any interest in the alleged indebtedness superior to plaintiff's interest. The cause was tried to the court without aid of a jury and garnishee was found to be indebted to Coal Company in the sum of $10,000, together with certain interest and costs. Upon garnishee's failure to discharge itself, judgment was entered in favor of plaintiff and against the garnishee for the amount of such indebtedness. Garnishee has appealed.

If garnishee is indebted to Coal. Company it is under the terms and provisions of a certain automobile liability insurance policy, referred to as a fleet policy, covering some of Coal Company's automobile delivery trucks. The policy, dated September 28, 1937, was in full force and effect and covered the two automobile trucks, which were used on December 21, 1937 to make deliveries of coal to St. Anthony's Hospital, in the City of St. Louis, at the point where plaintiff was subsequently injured. Except for testimony concerning the identity of the automobile trucks used in making the deliveries on that occasion, the cause was submitted upon an agreed statement of facts. The admitted facts are about as follows: Plaintiff was walking along the public sidewalk on Arkansas street, alongside of St. Anthony's Hospital, about 5:30 P. M., and after dark, on ▮ December 21, 1937, when he fell and was injured. He tripped over some wooden blocks located on the sidewalk at a point about 5 feet from the hospital building line. The blocks, two in number, were wedge shaped, about 3 feet long, 8 or 10 inches wide and 8 or 10 inches high. Coal Company's truck drivers, after delivering the coal to the hospital on that date, had placed the blocks on the sidewalk. It was the duty of Coal Company's drivers to put the coal through a coal hole in the sidewalk and into the hospital's coal bin under the sidewalk. The sidewalk at that point was about 8 or 10 inches higher than the street at the curb. The coal hole was 7 feet from the curb line and 4 feet from the building line. In order to get the back end of the trucks over the coal hole, so that the coal could be dumped into the hole, Coal Company's drivers had used the blocks as ramps or runways, with the large end of the blocks against the curb, in order to back the trucks from the street level onto the sidewalk. There was no other way to get the trucks on or off the sidewalk at that point. The blocks had been on the hospital premises for a long time. Coal Company's drivers had used them on prior occasions in delivering coal to the hospital and so had the drivers for other coal companies. A maintenance man for the hospital had directed Coal Company's drivers to remove the blocks from the gutter, when they finished using them, and to place them on the sidewalk a few feet away from the coal hole and next to the building line. At the trial of the cause, wherein plaintiff recovered judgment against Coal Company, Coal Company's drivers testified that they complied with these directions. The last load of coal was delivered by Coal Company about 11:30 A. M. on December 21, 1937, and the unloading was completed 30 minutes later. The last truck then moved down over the wooden blocks to the street level and, after the blocks had been placed on the sidewalk, the trucks were driven away by Coal Company's employees.

In plaintiff's suit against Coal Company, the petition charged, plaintiff's main instruction submitted, and the jury found from the

evidence that, at the time mentioned, there was in full force and effect an ordinance of the City of St. Louis, making it unlawful to place or throw upon any public sidewalk any article whatsoever so as to obstruct or otherwise encumber said sidewalk; that the Coal Company, its agents or servants, placed or threw the wooden blocks upon the sidewalk; that the blocks obstructed or encumbered the sidewalk; that, in so obstructing the sidewalk, Coal Company, its agents or servants, were negligent; and that, as a direct result of this negligence, the plaintiff was caused to fall and be injured. The jury, on April 15, 1941, returned a verdict in favor of the plaintiff and against Coal Company for $15,000, upon which judgment was entered and no appeal taken.

After the institution of the above damage suit, Coal Company notified garnishee and requested garnishee to defend the action under the terms and provisions of its policy, but the garnishee refused to undertake the defense of the suit, and Coal Company defended it in good faith at its own expense. When judgment was entered and had become final, Coal Company called upon the garnishee to pay all sums claimed to be due under the provisions of the policy. Garnishee contended that ''there was no coverage under the . . . liability policy for said accident.''

The automobile liability policy issued by garnishee to Coal Company contained the following applicable provisions:

''Declarations . . . Item 1. Name of insured, Fleming-Young Coal Company. Address, 2806 Market Street, St. Louis, Missouri. The automobile will be principally garaged and used in the above town, county and state, unless otherwise specified herein. The occupation of the named insured is Retail & Wholesale Coal Company.
. . .

''Coverages: A—Bodily Injury Liability. Limits of Liability. $10,000 each person and subject to that limit for each person. $20,000 each accident. . . . Item 5. The purposes for which the automobile is to be used are Commercial. . . . (b) The term 'commercial' is defined as the transportation or delivery of goods, merchandise or other materials, and uses incidental thereto, in direct connection with the named insured's business occupation as expressed in item 1. (c) Use of the automobile for the purposes stated includes the loading and unloading thereof.

''Utilities Insurance Company, St. Louis, Missouri . . . Does Hereby Agree with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and of the statements contained in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy.

''Insuring Agreements. 1. Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall

become obligated to pay by reason of the liability imposed upon him by law for damages, . . . because of bodily injury, . . . sustained by any person or persons, caused by accident and arising out of the ownership, maintenance, or use of the automobile.''

Appellant (garnishee) contends that respondent's injuries, for which he recovered damages against Coal Company ''were not caused by accident arising out of the ownership, maintenance or use of said company's automobile truck, including unloading thereof''; that ''the suit in which plaintiff recovered judgment for his injuries was not based on, nor was recovery had on a theory involving the use of an automobile truck, or the unloading of it''; and that ''there was no causal relation between plaintiff's fall and injuries and the use and process of unloading an automobile truck'' of Coal Company.

Appellant relies upon the following authorities: St. Paul Mercury Indemnity Co. v. Standard Accident Ins. Co. (Minn.), 11 N. W. (2d) 794; American Casualty Co. v. Fisher, 195 Ga. 136, 23 S. E. (2d) 395; Appleman's Ins. Law & Practice, Vol. 7, secs. 4317, 4322; Morgan v. New York Casualty Co., 54 Ga. App. 620, 188 S. E. 581; Luchte v. State Automobile Mut. Ins. Co., 50 Ohio App. 5, 197 N. E. 421; Stammer v. Kitzmiller, 226 Wis. 348, 276 N. W. 629; Caron v. American Motorists' Ins. Co., 277 Mass. 156, 178 N. E. 286; Franklin Co-op Creamery Ass'n. v. Employers' Liability Assur. Corp., 200 Minn. 230, 273 N. W. 809; Ocean Accident & Guaranty Corp. v. J. B. Pound Hotel Co., 69 Ga. App. 447, 26 S. E. (2d) 116; Maryland Casualty Co. v. United Corp., 35 Fed. Supp. 570; United States Fidelity & Guaranty Co. v. Breslin, 243 Ky. 734, 49 S. W. (2d) 1011; Zurich General Accident Co. v. American Mut. L. Ins. Co., 118 N. J. Law 317, 192 Atl. 387. A careful examination of the cases cited will disclose that no case deals with the negligent disposition of an instrumentality used to assist in the operation and use of an automobile in the accomplishment of its declared purpose. We believe that each case may be distinguished on substantial grounds from the facts and policy provisions under consideration here.

We consider first appellant's contention that the efficient, direct and proximate cause of the injury to respondent was the separate, independent and intervening negligent acts of the truck drivers in placing the blocks on the sidewalk and that there was no causal relation between respondent's injury and the use of the trucks covered by the policy. The policy, by its terms, does not require a finding that the injury to respondent was directly and proximately caused by the use of the automobile, or caused by the automobile itself, or that the injury occurred while the automobile was in motion or operation. The words of the policy are ''caused by accident and arising out of the . . . use of the automobile.'' The words ''arising out of . . . use'' are very broad, general and comprehensive terms. The insurer made no attempt to limit the plain, usual and ordinary

meaning of the terms used. We find nothing in the policy requiring that the ownership, maintenance, or use of the automobile. shall be the direct and "efficient cause of the injuries sustained," as appellant contends. The words used, we think, are much broader than the words "caused by," which are considered in some of the cases cited;. We must determine the intention of the parties to the contract from a consideration of the whole document, and the terms and provisions thereof. Keeping in mind, however, the established rules for the construction of insurance contracts, to wit, that a policy must be liberally construed in favor of the insured so as not to defeat, without a plain necessity, his claim to indemnity, which in making the insurance it was his object to secure; and that, when words are susceptible of two interpretations, that which will sustain insured's claim must, be adopted, since the language employed in the policy is that of the insurer (Soukop v. Employers' Liability Assur. Corp., 341 Mo. 614, 108 S. W. (2d) 86, 91), we must hold that the policy in suit does not require that the injury be the direct and proximate result, in any strict legal sense of that term, of the use of the automobile covered by the policy. Merchants Company v. Hartford Accident & Indemnity Co., 187 Miss. 301, 308, 188 So. 571; Appleman Insurance Law & Practice, Vol. 7, sec. 4317. Also, see, Panhandle Steel Products ▆▆ Co. v. Fidelity Union Casualty Co. (Texas Civ. App.), 23 S. W. (2d) 799.

▆ Did plaintiff's injury arise out of the "use" of Coal Company's automobile delivery trucks within the meaning, purpose and intent of. the policy? Whether or not plaintiff's injury, and the negligent act which caused it, arose out of the use of the trucks covered by the policy depends upon the general circumstances of the case as shown by the evidence, the nature of the use of the automobile trucks, as shown by the declarations in the policy, the connection or relationship. between the negligent act, which produced the injury; and the intended use of the trucks. We must consider whether the negligent act and resulting injury was a natural and reasonable incident or consequence of. the use of the trucks for the purposes shown by the declarations, though not foreseen or expected; and whether, after the negligent acts and injury were complete, it was possible to trace the negligent acts and resulting injury as reasonably incident to, and closely connected with, the use of the trucks for the purposes shown in the declarations in the policy.

The words "arising out of", we believe, are ordinarily understood to mean "originating from" or "having its origin in," "growing out of" or "flowing from." The injury, of course, did not arise out of the use of the trucks if it was directly caused by some independent act, or intervening cause wholly disassociated from, independent of and remote from the use of the trucks. See, American Casualty Co. v. Fisher, supra; Maryland Casualty Co. v. United Corporation, supra;.

Zurich Gen. Accident & Liability Ins. Co. v. American Mutual Liability Ins. Co., supra. Liability should not be extended to a result distinctly remote, although the chain of causation be not broken.

In this case, as we shall see, it may not be said as a matter of law that the negligent acts of the truck drivers (in disposing of the blocks after they had obtained and used them) was entirely disconnected from and disassociated with the ownership, maintenance or use of the trucks.

We need not determine whether there is anything in the provisions of the policy under consideration, which evidences an intention to limit the coverage of the policy to those occurrences which are necessarily incident to and grow out of the use of the automobile *as a motor vehicle* or to those occurences which arise out of the inherent nature of an automobile as such, as distinguished from its load, because in this case the blocks were obtained and used as a ramp or driveway for the trucks and as necessarily incident to the movement and use of the trucks in the delivery of coal to the hospital coal bin. The injury to respondent arose from the negligent disposition of the blocks when the use of the blocks on the particular occasion was completed, but the necessity for acquisition and disposition and the acts of disposition grew out of or arose from the use of the trucks, as trucks.

Appellant says that the gravamen of the damage suit was the negligent obstruction of a public sidewalk in violation of a city ordinance; and that the petition did not charge any negligence or injury arising from the use of the trucks covered by the liability policy. The amended petition in the action for damages alleged that Coal Company delivered coal to St. Anthony's Hospital; that the coal was unloaded through a coal hole in the sidewalk; that Coal Company's agents in delivering the coal possessed, controlled and used wooden blocks as runways to the coal hole; and that, thereafter, they negligently left the blocks on the traveled portion of the sidewalk in violation of said ordinance. We think it is wholly immaterial to any issue here presented that the petition made no specific reference to any use of the trucks described in the policy. Appellant was duly notified and requested to defend the action, and had full opportunity to determine the facts, but it denied that the policy provided any coverage under the circumstances.

While respondent's judgment against Coal Company was based solely upon the negligent acts of Coal Company's truck drivers in placing the wooden blocks upon the sidewalk in violation of the city ordinance, the evidence shows that the drivers acted immediately after they had finished using these blocks as a ramp or runway to get the last empty truck from the sidewalk to the street. The blocks had been obtained and used in order that the trucks might reach the place of delivery, discharge their cargos and proceed in the further service of the Coal Company. In view of the evidence that the blocks had

been on the hospital premises a long time ▓▓▓ and had previously been used for the same purpose by Coal Company's truck drivers, the inference may be drawn that the blocks were placed upon the sidewalk, as directed, in order that they would be available for future use of the same or other trucks for the same purpose. It is further apparent that the sole purpose of Coal Company's truck drivers in obtaining and using the blocks was to facilitate the use and operation of the trucks in the delivery of coal. There was no other way to get the loaded trucks to the place of delivery and no other way to get the empty trucks from the place of delivery back to the street. The use of the blocks, the obtaining of and disposition of them, was, therefore, directly connected with and necessarily incident to the operation and use of the trucks as motor vehicles in the transportation and delivery of coal, and the trucks, as such, were operated along, over and across said blocks.

We may concede that it appears from the admitted facts, that at the precise time when Coal Company's drivers negligently placed the wooden blocks on the sidewalk, said drivers were not in, nor operating the said trucks, nor were they unloading them. The coal from the last truck had been fully unloaded before the truck was removed from the sidewalk to the street and before the wooden blocks were removed from the gutter. While the delivery trucks were neither being operated nor unloaded at the time the drivers placed the blocks on the sidewalk, the trucks were present in the street, since it is admitted that the trucks and drivers left the place at the same time. It is further true, that neither the trucks, nor the drivers were present in the evening when respondent was injured, yet such fact is wholly immaterial, because respondent's recovery against Coal Company was based solely upon the negligent acts of the trucks' drivers in placing the blocks on the sidewalk immediately after the last truck, when empty, passed over the blocks on its return trip to the street. At that time both trucks and drivers were present and the removal of the blocks from the gutter was an act in the completion of the work immediately connected with the use of the trucks in the delivery of the coal.

While many cases have been cited by the parties and considered by us, we have found few applicable cases in view of the terms of appellant's policy and the agreed statement of facts.

In the case of Merchants Company v. Hartford Accident & Indemnity Company, supra, the automobile liability policy under consideration contained the words "injury . . . sustained by any person or persons, caused by accident and *arising out of* the ownership, maintenance or use of the automobile." (Italics ours.)

The Merchants Company, a wholesale distributor, used a number of automobile trucks in making deliveries to retail customers. While so engaged, one of its trucks went into a roadside ditch of a public

highway, and it was necessary to use several large poles in extricating the truck. When this had been done, the operator of the truck drove it away, leaving the poles in the road. That night Grubbs, a traveler in .a passenger automobile, struck one or more of the poles and. was severely injured, 'for which he recovered judgment against the Merchants Company.

The Court said: ''Certainly the use of the poles to extricate the truck from the roadside ditch was an event which arose out of, transpired in, and was necessary to, the operation of the. truck. The use of the poles in extricating the truck was a part and parcel of the operation of the truck. The next event which happened was that the. truck drove away, leaving the poles in the road, but the poles were not left until the moment when the truck drove away. There was no intervention of something which had no direct or substantial relation. to the use or operation. The use of the poles in extricating the truck. and thence the driving away and leaving the poles in the road thus had such a direct and substantial relation or connection in point. of actual fact as respects the use and operation of the truck that in order to separate that use or break its continuity, we. must interpose or insert, not an independent act, there being none such, but the negligent omission to remove the poles from the road, which, if allowed, would be to insert or interpolate into the contract a provision that liability shall follow only as to a strictly proximate cause; and, under familiar rules, we cannot rewrite the insurance contract by interpolating that provision therein.''

We think the act of the operator of the truck in placing the poles in the road and negligently leaving them after their use ▮▮▮ to extricate the truck from the ditch may not be distinguished from .the acts of Coal Company's truck drivers in obtaining the blocks to facilitate the use and operation of the trucks, as trucks, and then negligently placing the blocks on the sidewalk where they might be retained by the hospital and be available for future use.

In the case of Roche v. United States Fidelity & Guaranty Co., 287 N. Y. S. 38, 42, 247 App. Div. 335, affirmed 273 N. Y. 473, 6 N. E. (2d) 410, the indemnity clause in the policy contained the words ''caused by the ownership, maintenance or use of any automobile disclosed in the Declarations for the purposes therein stated.'' Plaintiff, a gasoline filling station attendant, pumping gas into the tank of the automobile covered by the policy, was injured by an explosion, when the owner and operator lit a match to examine the gasoline gauge on the tank. The court said: ''Unlike the Steir case (277 App. Div. 37, 237 N. Y. S. 40), wherein the act of throwing a match into the can of kerosene was in no sense connected with the ownership, operation, or use of the automobile, the act of the insured in the cases at bar in walking toward the tank with a lighted cigarette in his. mouth and a lighted match in his hand to examine the dial of the

gauge, at a time when visibility must have been poor, was clearly related to or connected with the ownership, maintenance, or use of his automobile. Can it be said as a matter of law that it was not essential to the maintenance or use of the automobile of the insured that the insured ascertain the amount of the gas in the tank? It seems not. It is our opinion that there was no intervening, independent, or proximate cause of the accident other than that incidental to the ownership, maintenance, or use of the automobile. The injuries were caused by the careless and negligent act of the insured in approaching the automobile with a lighted cigarette in his mouth and a lighted match in his hand.'' (287 N. Y. S. 38, 42.) It will be noted that the policy provision in the Roche case was not as broad as the policy provision here.

We hold that the negligent acts of Coal Company's truck drivers in placing the blocks on the sidewalk, under the circumstances shown by the record, and respondent's injuries therefrom, arose out of the use of Coal Company's automobile trucks within the meaning, intent and purpose of the policy. Quality Dairy Company v. Dearborn Casualty Underwriters (Mo. App.), 16 S. W. (2d) 613; Merchants Company v. Hartford Accident & Indemnity Co., supra; Roche v. United States Fidelity & Guaranty Co., supra; Panhandle Steel Products Co. v. Fidelity Union Casualty Co., supra; Maryland Casualty Co. v. Tighe, 115 Fed. (2d) 297; Mullen v. Hartford Accident & Indemnity Co. (Mass.), 191 N. E. 394. The negligence of Coal Company's truck drivers may not, as a matter of law, be held to be a separate, independent and intervening cause which did not arise out of the use of the trucks for the purposes stated in the policy.

The judgment is affirmed. *Bradley* and *Van Osdol*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.