**Mrs. Net V. TYLER, as Admx. of the Estate of Cecil H. Tyler, Deceased, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, INC., a corporation, Defendant.**

**Civ. A. No. 74–L–138–S.**

United States District Court, N. D. Alabama, S. D.

Sept. 25, 1974.

Roscoe B. Hogan, of Hogan, Smith & Alspaugh, Birmingham, Ala., for plaintiff.

Robert D. Norman, Norman & Fitzpatrick, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

LYNNE, Senior District Judge.

### I. STATEMENT OF THE CASE

This suit was instituted by plaintiff, Mrs. Net Tyler, an Alabama resident, against defendant, Insurance Company of North America ("INA"), to recover $50,000.00 under a limited coverage policy issued by defendant to plaintiff's deceased husband, Cecil H. Tyler. Jurisdiction is predicated on 28 U.S.C. § 1332 (1970).

Both plaintiff and defendant have moved for summary judgment, and the Court heard oral argument in the case on September 6, 1974.

There is little dispute as to the facts. Both parties agreed to submit the case for judgment on the basis of the pleadings and the deposition of Mr. Harold E. Lutz, who was with the decedent when the accident occurred.

Early on the morning of June 18, 1973, the seventy-nine year old Mr. Tyler and his son-in-law, Mr. Lutz, embarked on a fishing trip to the Holt Lock and Dam. They went in Mr. Lutz's car, to which was attached a boat trailer, which carried a 17½ foot, flat-bottomed fishing boat. When they arrived at the launching ramp, Mr. Lutz positioned the car and trailer on the ramp about fifteen to twenty feet from the water. As was their custom, Mr. Tyler then got out of the car and proceeded to undo the boat and get it ready to launch. Part of his activity during this phase of the launching was to loosen and hold the "floating rope," about thirty feet long, while the trailer was backed into the water. He would then hold this floating rope to secure the now-free boat, while Mr. Lutz drove the car and trailer forty to sixty feet away to park. At this point, the rope in Mr. Tyler's hand was attached to the boat, which was still on the trailer, which in turn was attached to the car.

All went routinely until Mr. Lutz, mistakenly thinking the boat had floated free, drove up the ramp and parked the vehicle. While locking the passenger side door, he heard Mr. Tyler's pleas for help, and, looking back through the passenger-side window, saw Mr. Tyler lying on the ground, seriously injured. He managed to get Mr. Tyler to the hospital. There he learned from Mr. Tyler that the boat had not floated free and that the deceased, assuming his son-in-law would pull forward and back in again, had continued to hold the floating rope. As soon as he saw that Mr. Lutz planned to park the car, he dropped the rope, not realizing that he was standing on it. The force of the car pulling forward looped the rope around the instep of Mr. Tyler's left foot, resulting in his being pulled off his feet and dragged along behind the car and trailer. Mr. Lutz was oblivious to this series of events because the windows of his car were closed, and the back window was fogged.

On July 11, 1973, Mr. Tyler died from the injuries sustained in this accident.

On February 13, 1974, plaintiff filed this suit, seeking to recover under the following language of an insurance agreement between Mr. Tyler and the defendant:

> . . . the company insures [the insured] . . . against loss of life . . . resulting . . . from bodily injuries . . . caused by accident occurring while this policy is in force and arising out of the following specific hazards:
>
> (c) driving . . . or riding in or on, boarding or alighting from
>
> (1) any pleasure type automobile . . . or
>
> (d) being struck by any automobile, truck or public conveyance.

### II. ISSUE

Simply stated, then, the sole issue to be resolved on this motion is whether decedent's death as a result of being

pulled off his feet and dragged by a rope connected indirectly to an automobile may be said to have arisen out of alighting from an automobile and/or out of being struck by an automobile.

## III. CONCLUSION

It is concluded herein that the plaintiff may not recover under the above clauses, since the language, given a natural and unstrained reading, cannot be stretched to cover the factual situation presented.

## IV. DISCUSSION

■■ It is elementary that an insurance contract will be construed most strongly against the party who framed it. *Life Insurance Co. of Georgia v. Miller*, 292 Ala. 525, 296 So.2d 900, 905 (1974). This rule of construction, however, cannot be used either to create ambiguity where there is none or to make a new and different contract for the parties. *See, e. g., Lingo v. Gulf Life Ins. Co.*, 32 Ala.App. 525, 27 So.2d 697, cert. denied, 248 Ala. 367, 27 So.2d 700 (1946).

■ A. The plaintiff makes a valiant effort to unlock the ambiguities latent in the phrase "arising out of."[1] She cites three Workmen's Compensation cases as supporting a reading of the phrase which would allow coverage if Mr. Tyler's death "had *any connection with*" [emphasis plaintiff's] either of the two hazards named in the contract: *Thomas v. Proctor & Gamble Mfg. Co.*, 104 Kan. 432, 179 P. 372, 6 A.L.R. 1145 (1919); *Trudenich v. Marshall*, 34 F. Supp. 486 (W.D.Wash.1940); and *Amicucci v. Ford Motor Co.*, 308 Mich. 151, 13 N.W.2d 241 (1944). Such a broad reading, it is clear, would expand the ordinary meaning of the specific hazards described in the contract. In *Thomas*, however, the court read the phrase to require that the injury be a direct and natural result of a risk reasonably incident to the employee's work; in *Trudenich*, the court required a causal relation and denied recovery where the injury was merely coincidental; and in *Amicucci*, the court likewise required a causal connection between the injury and the employee's work, noting that the phrase would not allow recovery on a risk disassociated from the work. These cases will not support plaintiff's broad construction.

Some courts have read "arising out of" seemingly as broadly as plaintiff contends, holding that it is much broader than "caused by," and can be said to mean "originating from," "having its origin in," "growing out of," or "flowing from," or, in short, "incident to" or "having connection with" the specified automobile hazards. *See, e. g.*, *Schmidt v. Utilities Ins. Co.*, 353 Mo. 213, 182 S. W.2d 181 (1944); *see, generally*, Annot. Automobile Liability Insurance: What are Accidents or Injuries "Arising Out of Ownership, Maintenance, or Use" of Insured Vehicle, 89 A.L.R.2d 150 (1963).

■ The Alabama courts, however, have not adopted such a broad reading. In *American Liberty Ins. Co. v. Soules*, 288 Ala. 163, 258 So.2d 872 (1972), one Heth, while moving his pistol from under him, accidentally shot his fiancee, while they were sitting in a parked car. When she sought coverage under a homeowner's policy which covered an "accident arising out of the ownership, maintenance, or use * * * of the owned automobile," the court denied her effort, defining "arising out of" as follows:

[T]he phrase would denote the use of the insured's automobile as the cause of the accident, and in order to satisfy this requisite the rational mind must be able to trace the resultant injury to a proximate cause set in motion by the use of the automobile and not otherwise. 258 So.2d at 875.

---

1. Although the matter is not precisely clear from the wording of the contract, both plaintiff and defendant agree that "arising out of" modifies "accident" and not "loss of life" in the operative clause. *Nelson v. Iowa Mutual Ins. Co.*, Mont., 515 P.2d 362 (1973), illustrates a case where this was an issue.

The Court should adopt Alabama's gloss for the phrase "arising out of." [2] Paraphrasing the language from *Soules*, it is clear that the "rational mind must be able to trace the resultant injury to a proximate cause set in motion by [alighting from the auto] and not otherwise."

B. Using her broad construction of "arising out of" as her base, plaintiff next contends that Mr. Tyler's accident *"arose out of* his 'alighting from' the automobile." [emphasis plaintiff's] To accomplish this remarkable linguistic feat, she ingeniously analyzes the activities at the boat landing as a process with two phases: (1) alighting from the car, and (2) embarking in the boat upon the fishing trip. She continues:

> The first phase must certainly include the parking of the vehicle, turning off the motor and lights, and the alighting from the car of *both* companions. The activities of Mr. Tyler during this first phase were directed solely at facilitating the removal of the boat from the trailer so that the car could be parked and the fishing trip begun. The first phase must be said to include the full five-minute period which it customarily took Mr. Tyler *and Mr. Lutz* to perform these duties. Plf's brief, p. 11 [emphasis supplied]

The statement of the argument reveals its fallacy since it seeks to expand the phrase "alighting from" by encompassing all activities until both companions had left the car and entered the boat. Neither party has found, nor has my research revealed, any Alabama case on point. The plaintiff cites two cases, Madden v. Farm Bureau Mutual Automobile Ins. Co., 82 Ohio App. 111, 79 N. E.2d 586 (1948), and Lokos v. New Amsterdam Casualty Co., 197 Misc. 40, 93 N.Y.S.2d 825 (1949), in support of her

argument, but neither deals with the issue before this Court. [3] More in point is Saint Paul-Mercury Indemnity Co. v. Broyles, 230 Miss. 45, 92 So.2d 252 (1957), where after the plaintiff had parked her car and stepped out, the brakes slipped, and the car ran over her as she walked around the rear of the car to go in the house. She sought recovery under a policy which protected her in the event of an "accident, while in or upon, entering or alighting from the automobile." The court, noting that only a few seconds elapsed between her getting out and the accident, granted recovery. It relied on "a continuity of movement . . . ." and the fact that there was "no interruption in [her] actions involved in the act of alighting from the car and leaving it." 92 So.2d at 254.

The *Broyles* case provides a reasonable construction of "alighting from," one which the courts of Alabama likely would adopt. Under that construction, Mr. Tyler cannot recover, as he had removed himself from the car and from close physical proximity with it, and had directed all his activities towards the boat and the trailer, a separate action from alighting from the car. (Lutz deposition, p. 41). A person is not in the process of alighting if, at the time of the accident, he has completed all acts normally performed by persons getting out and away from the automobile under similar circumstances and if he has embarked on conduct entirely distinct from acts reasonably incident to making an exit out of and away from the car. *See* Carta v. Providence Washington Indemnity Co., 143 Conn. 372, 122 A.2d 734, 736, 737 (1957); Ross v. Protective Indemnity Co., 135 Conn. 150, 62 A.2d 340, 341 (1948); [4] *see generally* Annot., Automobile Insurance: When is a Person "Occupying" an Automobile

2. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

3. In *Madden*, the court construed the words "in or upon" in finding that plaintiff was covered in an accident occurring while he was placing a removed tire in the rear compartment of his car; in *Lokos*, the court

construed "upon" and "use" to find coverage where plaintiff was injured while tying up the front bumper of his car.

4. The *Carta* case, on facts similar to those in *Broyles*, reached a contrary result. The citation for its language should not be read as approval of its result.

Within Meaning of Medical Payments Provision, 42 A.L.R.3d 501, 518 (1972).

C. Plaintiff next argues, with greater merit, that she can recover under the provision extending protection to the hazard of "being struck by any automobile, . . ." Her argument is that decedent was struck by the rope, not by the car, and that actual physical contact with the car is not essential to coverage under the policy language.

In support, she cites numerous cases which stand for the proposition that one may recover under the language "struck by an auto" despite the fact that there was no direct contact between the insured and the offending automobile. This is the majority rule, Annot., Automobile Insurance: Construction of Medical Payments Provision Covering Injuries Incurred When "Struck By" Automobile, 33 A.L.R.3d 962 (1970), although there is authority *contra*. *See,* *e. g.,* Bowab v. St. Paul Fire & Marine Insurance Co., 152 So.2d 66 (La.App. 1963); Metropolitan Casualty Ins. Co. v. Curry, 156 Fla. 502, 24 So.2d 316 (1945). Whether Alabama would follow the majority rule might be viewed as doubtful, *cf.* Lingo v. Gulf Life Ins. Co., 32 Ala.App. 525, 27 So.2d 697, cert. denied, 248 Ala. 367, 27 So.2d 700 (1946). But the question does not arise because the operative phrase requires a "striking," which is absent on the facts presented by this case.

■■ "Struck" is the past tense of the verb "strike." It means to deliver a blow, stroke, or thrust. Its synonyms include hit, smite, punch, slug, slog, swat, clout, slap, cuff or box, "all of which indicate the coming or bringing into contact with or as if with a sharp blow. . . ." Webster's Third New Int'l Dictionary (1971); *see also* Dean v. American Fire & Cas. Co., 249 S.C. 39, 152 S.E.2d 247, 248–249 (1967). The editors of that noted reference work summarize further that "strike":

> May indicate various types of contact from a light, often stroking contact

<the light breeze *struck* the ship on the north side> to a forcible collision or blasting contact <the car *struck* a post and overturned>. . . . *Id.*

Ordinary men would understand the phrase in issue to require sudden or forcible contact. And it is the interpretation of ordinary men which must be applied in seeking to understand the intent of the parties entering into an insurance contract. Universal Underwriters Ins. Co. v. Marriott Homes, Inc., 286 Ala. 231, 232, 238 So.2d 730 (1970).

■ There is nothing in the record to support a finding that Mr. Tyler was "struck" by anything. According to Mr. Lutz, the car did not lurch forward during the tragic episode, nor did the rope snap around Mr. Tyler's foot;[5] rather it "looped" his foot so that the pulling force of the car's forward movement tightened the rope around his foot, dragging him along behind. The only evidence of any sudden impact in the record occurs in the following words from Mr. Lutz's deposition:

> Evidently when the rope pulled him, he was standing alongside of the boat facing the boat and it hooked his left foot, and when it *jerked* him it *jerked* him on his right side. (p. 30)

> . . . And Dr. Brook explained that the separation or the splitting of the pelvis must have been when the rope *jerked* him down, that his right leg probably went to the back and outside and threw him open this way (indicating) and split him. And this is what they felt pulled the separation of the pelvis. (p. 36) [emphasis added]

Mr. Tyler's impact with the ground as a result of having his leg pulled from under him, however, cannot provide a satisfactory nexus between the words "struck by" and "an automobile." Stretched to their ordinary limit, those words still require, at minimum, a sudden impact between the injured and the automobile, or between the injured and something set in sudden motion by the

5. *Compare* Gilbert v. Life & Casualty Co., 185 Ark. 256, 46 S.W.2d 807 (1932).

impact of the automobile upon it (*e. g.,* glass and canned goods toppled as a result of a truck's colliding with a building, McKay v. Travelers Indemnity Co., Ohio App., 27 Ohio Op.2d 76, 193 N.E.2d 431 (1963)), or between the injured and something set in sudden motion as a result of the automobile's force (*e. g.,* a cable slipping off a stump and snapping back, *Gilbert, supra,* n. 5).

For the foregoing reasons, judgment should be entered in the defendant's favor.[6]

6. The foregoing opinion was originally prepared as a memorandum for the Court by E. Mabry Rogers, Law Clerk, who was present at the oral arguments of counsel on the cross-motions for summary judgment. It has been reproduced in its entirety as the considered opinion of the Court.