**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 08-1357/1820

———————

NORTHEAST CONTROLS, INC.;
ST. PAUL MERCURY INSURANCE COMPANY

v.

FISHER CONTROLS INTERNATIONAL LLC,

Appellant

———————

Appeal from the United States District Court
for the District of Delaware
(D. C. No. 06-cv-00412)
District Judge:  Hon. Sue L. Robinson

———————

Argued on October 1, 2009

Before:  AMBRO, GARTH and ROTH, <u>Circuit Judges</u>

(Opinion filed:  April 1, 2010)

Paul A. Bradley, Esquire
Maron, Marvel, Bradley & Anderson, P. A.
1201 North Market Street, Suite 900
P. O. Box 288
Wilmington, DE   19801

Mark C. Hansen, Esquire
Michael K. Kellog, Esquire **(Argued)**
Gregory G. Rapawy, Esquire
Kellogg, Huber, Hansen, Todd, Evans & Figel, P. L. L. C.
1615 M Street, N. W., Suite 400
Washington, D. C.   20036

Counsel for Appellant

Thomas P. Wagner, Esquire
John J. Hare, Esquire **(Argued)**
Kimberly A. Boyer-Cohen, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
1845 Walnut Street
Philadelphia, PA 19103

Counsel for Appellees

O P I N I O N

ROTH, <u>Circuit Judge</u>:

Fisher Controls International, LLC ("Fisher") appeals from the District Court's denial of Fisher's motion to amend its counterclaim, as well as the District Court's grant of summary judgment against Fisher and in favor of appellees Northeast Controls, Inc. and St. Paul Mercury Insurance Co.  For the reasons that follow, we will reverse and remand for further proceedings.

# I.

On May 20, 2000, there was an explosion and fire ("Explosion") at a power plant located in Delaware City, Delaware ("Power Plant"). The Explosion seriously injured an employee of the Power Plant and damaged machinery surrounding the location of the blast. The incident gave rise to four lawsuits, collectively referred to hereinafter as the "Underlying Litigation." The plaintiffs in the four suits comprising the Underlying Litigation were, respectively, (1) Praxair Inc. ("Praxair"), an engineering company responsible for the design and construction of an air separation unit that was damaged in the Explosion; (2) Motiva Enterprises LLC, the operator of the Power Plant; (3) Great American Assurance Company, an insurer for several parties that suffered losses from the Explosion, including Praxair, Inc. and Motiva Enterprises LLC; and (4) Ronald Olson ("Olson"), an employee of the Power Plant who was injured in the Explosion. Among the parties named as defendants in the Underlying Litigation were appellant Fisher and appellee Northeast Controls, Inc.[1]

According to allegations in the Underlying Litigation, the Explosion was caused by a faulty valve ("Valve") that had been fabricated by Fisher using materials unsuitable for the Valve's intended use. Northeast Controls, which received the original order for the Valve in its capacity as a sales representative for Fisher, was alleged to have incorrectly transmitted the desired specifications to Fisher, which then produced the Valve in accordance with the

---

[1]The other appellee, St. Paul Mercury Insurance Co., is Northeast's insurer. In defending and settling the Underlying Litigation, Northeast and St. Paul incurred more that $1.2 million in legal fees and costs.

erroneous instructions. Fisher fabricated the Valve according to the erroneous instructions, utilizing the less combustion-resistant materials, and subsequently delivered it to the Power Plant, where it met its end just moments after first being activated.

Fisher obtained summary judgment in the actions brought by Praxair and Olson, and was dismissed as a defendant in the other two suits. Without admitting fault, Northeast Controls paid $601,000.00 to settle all claims against it. Northeast also voluntarily dismissed its cross-claims against Fisher in the Olson suit.

On May 28, 2006, appellees Northeast Controls and St. Paul (collectively referred to hereinafter as "Northeast") filed a complaint against Fisher, seeking to recover the costs incurred in defending against and settling the Underlying Litigation. Northeast alleged that it was entitled to indemnification from Fisher pursuant to the indemnity clause contained in the parties' 1998 Representative Agreement ("Agreement").[2] In response, Fisher denied its contractual obligation to indemnify Northeast, and also filed a counterclaim seeking as damages its own costs in defending against the Underlying Litigation, alleging that Northeast's erroneous transmittal of the Valve order specifications constituted a breach of the Agreement, thereby entitling Fisher to the damages it incurred as a result—namely, the costs of defending against the Underlying Litigation..

In its initial counterclaim, filed on August 18, 2006, Fisher sought its defense costs

---

[2]We note that the Agreement contains a choice-of-law provision, and we assume that the District Court on remand will have the parties determine the appropriate law governing the Agreement, given the existence of that provision.

only as an offset to any possible recovery by Northeast, but did not seek an affirmative monetary recovery. Just under one year later, on August 15, 2007, Fisher filed a motion seeking leave to amend its counterclaim to seek an affirmative monetary recovery as well, regardless of whether or not Northeast was awarded damages on its claim. On November 1, 2007, the District Court issued an order denying Fisher's motion to amend.

Later, both parties moved for summary judgment on their respective claims, and on January 18, 2008, the District Court granted summary judgment for Northeast on its claim for indemnity from Fisher, and against Fisher on its counterclaim against Northeast for breach of contract. On March 12, 2008, the District Court entered judgment in favor of Northeast and against Fisher in the amount of $1,207,833.50, plus prejudgment interest.

Fisher timely appealed the District Court's denial of its motion to amend, as well as the District Court's grant of summary judgment in favor of Northeast and against Fisher.

## II.

The District Court had subject matter jurisdiction under 28 U.S.C. § 1332, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## III.

We now turn to the merits of the case. Northeast alleges that Fisher breached the parties' Agreement in refusing to indemnify Northeast for the costs it incurred in defending against and settling the Underlying Litigation, and is therefore liable to Northeast for damages in the amount of those costs. Northeast's claim is based upon a right to

indemnification created pursuant to the indemnity clause included in the Agreement between it and Fisher.

The indemnity clause is composed of two parts. The first part, referred to hereinafter as the "Obligation Clause," provides the situations in which Fisher becomes obligated to indemnify Northeast. It reads, in pertinent part:

> Subject to the limitations set forth in the immediately succeeding paragraph of this Section...Fisher agrees that it shall, at its own expense, protect, defend, indemnify and hold harmless Representative from and against any and all claims, demands, actions, losses, damages, liabilities, costs and expenses (collectively "Losses") which may arise out of or be made in connection with the death or injury of any person, or damage to property, by whomsoever suffered, resulting or claimed to result from any actual or alleged defect in any Product.

App. at 539.

The second part of the indemnity clause, referred to hereinafter as the "Escape Clause," sets out the situations in which Fisher escapes from its contractual obligation to indemnify Northeast, notwithstanding an activation of that obligation pursuant to the Obligation Clause. The Escape Clause reads, in pertinent part:

> Notwithstanding the provisions of the immediately preceding paragraph of this Section...or any other provision of this Agreement, Fisher shall not be obligated to protect, defend, indemnify or hold harmless [Northeast] from and against any Losses arising from the...[n]egligent acts or omissions by [Northeast].

Fisher must demonstrate that Northeast's negligence caused the Explosion. We believe that a genuine issue of material fact exists as to whether or not Northeast's negligence did indeed cause the Explosion, and consequently as to whether or not Northeast

is entitled to immunity under the Agreement.[3]   The record contains at least two pieces of evidence that, particularly when viewed in a light most favorable to Fisher, point to the existence of a causal relationship between Northeast's negligence and the Explosion.

One is the deposition testimony of Guido Karcher, P.E., lead investigator for Great American Assurance Company, one of the plaintiffs in the Underlying Litigation.  In his deposition, Karcher testified that he had concluded that the Valve was a cause of the Explosion because it contained materials that were not in the specifications requested in the original order.  App. at 722.  Karcher also stated that the Explosion would not have occurred if the Valve had "been as specified and built to the oxygen standard requirements," giving particular emphasis to the "nonmetallic[]" components of the Valve.  Id.

The second is a preliminary report issued by Wendell Hull & Associates, Inc., a private engineering firm retained by the operator of the Power Plant to determine the cause of the Explosion.  The report ("Wendell Hull Report") found that the Explosion had most likely occurred in the proximity of the Valve, and noted the discrepancy between the materials that were supposed to be used in the Valve's fabrication and the materials that were actually used.  App. at 566, 571.

Viewing the record—including the two materials cited above—in a light most favorable to Fisher,  we conclude that a genuine issue of material fact exists as to whether

---

[3]See Northeast Brief at 19 ("If the change in the valve's specifications had caused the explosion and fire, and the resulting personal injuries and property damages, Northeast agrees that it would not be entitled to defense and indemnity.").

-7-

or not Northeast's negligence caused the Explosion, and therefore as to whether or not Fisher is obligated to indemnify Northeast pursuant to the Agreement.

Since a genuine issue of material fact exists as to whether Fisher is obligated under the Agreement to indemnify Northeast for its losses in the Underlying Litigation, the District Court erred in granting summary judgment to Northeast on its indemnity claim.

**IV.**

We next consider whether the District Court erred in finding that Fisher's counterclaim failed as a matter of law, thereby effectively granting summary judgment in favor of Northeast. The District Court grounded its finding on this issue in the same reasoning upon which it relied in granting summary judgment to Northeast on its indemnity claim.[4] As noted above, see supra Part I, the District Court's grant of summary judgment on the indemnity claim was erroneous due to the existence of a genuine issue of material fact with regard to the causal relationship between Northeast's negligence and the Explosion. For the same reasons that the District Court erred in granting summary judgment to Northeast on its indemnity claim, it also erred in granting summary judgment against Fisher (and in favor of Northeast) on Fisher's counterclaim.

---

[4]See Memorandum Order, Northeast Controls, Inc. v. Fisher Controls Int'l LLC, No. 06-cv-0412 (D. Del. Jan. 18, 2008) at 7 n.4 ("**Consistent with the above reasoning**, the court rejects Fisher's claim under Missouri law for its costs in defending the Underlying Litigation....") (emphasis added).

## V.

We review the District Court's denial of Fisher's motion to amend for abuse of discretion. Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137 (3d Cir. 2009). The District Court's order denying Fisher's motion to amend reads as follows: "At Wilmington this 1st day of November, 2007, having reviewed defendant's motion to amend counterclaim and the papers submitted in connection therewith; IT IS ORDERED that said motion is denied as untimely." Order, Northeast Controls Inc. v. Fisher Controls Int'l LLC, No. 06-412 (D. Del. Nov. 1, 2007). A footnote adds: "Amendments to the pleadings were due to be filed on or before March 12, 2007. Defendant's motion to amend its counterclaim was filed on August 15, 2007." Id. (internal citations omitted).

"[D]elay alone is not sufficient to justify denial of leave to amend" a complaint. Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006). In particular, a delay of less than a year—as was the case here[5]—is not sufficient grounds to justify denial of leave to amend, absent additional factors militating for a denial. Id. (finding that a delay of eleven months is "not, on its face, so excessive as to be presumptively unreasonable"). Rather, to justify a denial to amend, there must be some finding that "the plaintiff's delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the opposing party." Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 266 (3d Cir. 2008).

---

[5]Fisher first filed its counterclaim on August 18, 2006, and moved for leave to amend on August 15, 2007. Fisher Br. at 53.

Inasmuch as the District Court cites only the untimeliness of Fisher's motion to amend its complaint, and offers no other grounds for its decision, we conclude in light of Maersk, supra, that the District Court abused its discretion in denying Fisher's motion to amend.

## VI.

For the foregoing reasons, we will reverse the District Court's grant of summary judgment for Northeast and the District Court's denial of Fisher's motion to amend its counterclaim, and remand for further proceedings consistent with this opinion.

Northeast Controls, Inc., et al. v. Fisher Controls International, LLC
Nos. 08-1357 & 08-1820

AMBRO, Circuit Judge, concurring

While I join the majority opinion in full and agree that there are issues of material fact precluding summary judgment, I write separately to add an additional inquiry I believe the District Court should conduct. There is no question that, if a jury concludes that Northeast's negligence caused the explosion, any losses arising from that negligence, including its attorneys' fees and settlement costs, would not be Fisher's indemnification responsibility. But there is another issue as well—whether Northeast's negligence caused the *losses* incurred, not whether it caused the *explosion*. This is a key distinction because the indemnity clauses are concerned with "Losses," defined as "claims, demands, actions, losses, damages, liabilities, costs and expenses." App. 539.

It is important to articulate the precise degree of causation at issue here. "[A]rising from" and "arising out of" are very broad under Missouri law. *Schmidt v. Utils. Ins. Co.*, 182 S.W.2d 181, 183 (Mo. 1944); *accord Capitol Indem. Corp. v. 1405 Assocs., Inc.*, 450 F.3d 547, 550 (8th Cir. 2003). These phrases do not require direct and proximate causation, but instead only require a simple causal relationship. *Capitol Indem.*, 450 F.3d at 550.

In *Schmidt*, the Court dealt with how far the causal chain could go before the plaintiff's injury could no longer arise out of the use of the defendant's delivery trucks. It determined that the use of wooden blocks on the sidewalk, whose sole purpose was to

facilitate the use and operation of the trucks in the delivery of coal, was "directly connected with and necessarily incident to the operation and use of the trucks." *Schmidt*, 182 S.W.2d at 185. As a result, the Court concluded that, even though the drivers were not operating or even unloading the truck, their negligent placement of wooden blocks on the sidewalk did, in fact, "arise out of" the use of the trucks. *Id.* at 186. As *Schmidt* demonstrates, the use of "arising out of" in indemnity agreements under Missouri law is broad indeed.

In this case, while without a doubt causing the explosion necessarily causes the losses, it is possible for Northeast's negligence not to cause the *explosion* but still to cause the *losses*, either of which excludes Fisher's indemnity obligations. If Northeast is shown to be negligent in transmitting the order to Fisher, resulting in delivery of an incorrect valve, a jury could find the causal relationship required between the negligent act and the losses incurred to exempt indemnity coverage. For example, the "arising from" relationship could be established by the following logic: (1) the negligent transmission by Northeast of the order; (2) the delivery of an incorrect valve; (3) the valve is involved in the explosion; (4) the valve is unexpectedly damaged in the fire; (5) the valve's fire damage prompts an investigation focusing on the valve and a belief that it is the cause of the fire; (6) the investigation prompts the filing against Northeast and Fisher of the Underlying Litigation, which alleges direct negligence by both of them caused the fire; and (7) Northeast incurs over $1 million of "Losses" in the form of legal fees and

2

settlement costs related to defending against the Underlying Litigation. This causal chain is less attenuated then the chain in *Schmidt*, and it is sufficient to establish Northeast's negligence as the cause of the losses, irrespective of whether the negligence was the proximate cause of the explosion. In this scenario, even if the jury determines that negligence did not actually cause the explosion, it could reasonably find that the delivery of the incorrect valve, the investigation, the lawsuits—and most importantly, the losses—all arose from Northeast's negligence.

Thus, the inquiry should focus on the "arising from" language and the connection between any negligent acts or omissions committed by Northeast and the losses incurred by Northeast. Finding a causal relationship between the negligence and the explosion is merely one way to make the connection to the losses. With this additional clarification, I join the majority opinion in full.